JOHNSON *v.* STATE.

No. 39537          January 17, 1955          76 So. 2d 841

*R. G. Wigginton,* Gulfport, for appellant.

*Wm. E. Cresswell,* Asst. Atty. Gen., Jackson, for appellee.

ETHRIDGE, J.

Walter Johnson, the appellant, was convicted in the Circuit Court of Harrison County of the crime of rape, and was sentenced to suffer the death penalty. Code of 1942, Sec. 2358. The crime occurred around 10:30 P. M. on the night of March 30, 1954, in the City of Biloxi, Harrison County, Mississippi. It is undisputed that appellant committed the offense. The prosecutrix, a young white married woman, testified that appellant had a knife and threatened the life of herself and her sister, with whom she was going home, unless she submitted to his demands.

She unequivocally identified Johnson as the culprit, and she had ample opportunity to observe him on the occasion in question. Her sister also definitely identified appellant. Dr. W. A. Tisdale, who examined the prosecutrix shortly after the rape occurred, testified concerning the condition of her body after the rape, and his examination fully confirmed her statements. Appellant, a Negro, was a soldier stationed at Keesler Field. Corporal Zike arrested him when he returned to Gate Number One around 11:05 P. M. that night, and took a knife from him. Appellant made an oral confession to Sergeants Etheridge and Hill of the Air Force Police, in which he admitted the crime and the use of the knife which was taken from him as the instrument of coercion. Assistant Chief of Police Walter Williams and Captain Charlie Comeaux, of the Biloxi Police Department, testified that appellant signed two separate written confessions of the crime, one dated March 30, 1954, and another April 7, 1954; and that these confessions were wholly voluntary and made without any coercion or

promise of leniency. They admitted appellant's premeditated, criminal rape of the prosecutrix. Appellant did not testify, either on the preliminary hearing concerning the confessions or on the merits. He offered no evidence and made no issue as to the admissibility of the confessions. Since there is no dispute as to the facts, we will not undertake to outline the repulsive details of appellant's crime.

Appellant argues that the verdict of the jury is against the great weight of the evidence. However, this record contains no dispute of the State's testimony and Johnson's two confessions that he committed the crime. Apparently the argument on this point is the claim that the prosecutrix did not offer sufficient resistance to the commission of the crime. But the record shows that she and her sister, who was present at the time, were rendered incapable of physical resistance because of the fact that appellant had with him a large knife with which he threatened to kill both the prosecutrix and her sister if they resisted or cried out. Where the act is accomplished after the female yields through fear caused by immediate threats of great bodily injury, there is compulsive force and the act is rape. Actual physical force or actual physical resistance is not required where the female yields through fear under a reasonable apprehension of great bodily harm. Here the threats were made before the act through the exhibition of, and threat to use, a deadly weapon, a knife. Actual physical resistance by the female is not required in such circumstances. 75 C. J. S., Rape, Sec. 15; Milton v. State, 142 Miss. 364, 107 So. 423 (1926); McGee v. State, 40 So. 2d 160, 171 (Miss. 1949).

The trial court committed no error in admitting into evidence the two confessions of appellant. It is undisputed that appellant was fully advised as to his rights and that he made the statements voluntarily, without coercion of any kind. Appellant did not testify upon the

preliminary examination as to their admissibility and offered no evidence that such statements were not voluntary. There is no evidence that he was overawed, frightened or intimidated by the officers, as appellant asserts.

On the voir dire examination, the juror Scarborough had been accepted as a juror by the State. He had testified that he had no conscientious scruples against the imposition of capital punishment. While being questioned by the defendant's attorney, Scarborough changed his prior testimony, and said that he had a strong conviction against the imposition of capital punishment. The court then interrogated him and was advised by him that he did not believe in capital punishment. Thereupon the trial judge excused Scarborough as a juror, and stated that he wanted the jury to understand that the court was taking no part in the decision on the facts, that whether appellant was guilty, and, if so, the type punishment he should receive, were questions for the jury, but that since Scarborough did not believe in capital punishment, that was a disqualification in a capital case. Appellant says that the effect of the court's action was to advise the jury that their readiness to inflict capital punishment was their most important qualification, and that this action prejudiced the jury against appellant.

In cases where the death penalty can be imposed by a jury, it is the duty of the judge to inquire of the jurors whether they have conscientious convictions against inflicting the death penalty. Phenizee v. State, 180 Miss. 746, 178 So. 579 (1938). A somewhat similar case to the instant one on this question is Lewis v. State, 9 S. and M. 115 (Miss. 1847). The court was performing its duty in this respect, and committed no error in acting as it did. We find no prejudice to appellant resulting from this incident.

Appellant made no point either before or during the trial that he was insane and incapable of distinguishing between right and wrong as to the particular acts

with which he was charged, or at the time of the trial. He filed no suggestion of insanity nor any other pleading raising that issue before or during the trial. He did not testify in his own defense, and the only witness he offered was Captain Robert W. McGill, the commanding officer of the Student Squadron of which appellant was a member. He testified that appellant came to the squadron on January 1, 1954, and that he is 17 years of age. (18 now.) He knew nothing about the alleged crime. Appellant's counsel asked McGill his opinion of appellant's mental age, and what peculiarities he displayed. Appellant's attorney stated that he was not pleading insanity. After that statement the trial court sustained an objection to those questions. If appellant had pleaded insanity, they would have been proper. In fact, the district attorney on the trial conceded that. However, since in the trial on the merits appellant's counsel advised the court that he was not pleading insanity, the court was not in error in sustaining that objection to the stated questions to McGill. Appellant asked for and obtained no instructions on the question of sanity, and did not submit that issue to the jury.

Appellant filed a motion for a new trial, which set up two new points not previously raised by him: (1) Newly discovered evidence which would show that appellant was insane at the time of the crime, during the trial, and subsequent thereto, and that Dr. H. L. Deabler, a clinical psychologist, had examined appellant and made this diagnosis; (2) that no Negroes were summoned to serve on the panel from which the grand jury and petit jury were drawn.

On the hearing of this motion for a new trial, appellant offered, to support his contention of insanity, Dr. H. L. Deabler. He is the chief clinical psychologist at the Veterans Administration Hospital in Gulfport. The substance of his lengthy testimony is that appellant has a gross over-development of the sexual impulse; and it

has resulted in his taking on feminine ways and being attracted to feminine things. On the occasion of this rape, appellant was wearing women's clothing, including underwear. Dr. Deabler said that appellant had failed to develop a sense of right and wrong or a "healthy conscience"; that appellant at the time of the rape had "a strong uncontrollable compulsion" and therefore was not conscious of right and wrong. His acts are characterized by transvestitism and voyeurism.

However, he stated that he had made a psychodiagnostic test to determine appellant's sanity, and that this test showed him to be "sane in our sense, in contact with reality." He was not psychotic and was not insane, from a psychologist's point of view, but Dr. Deabler thought that he was legally insane, since he thought that appellant had such an uncontrollable compulsion that he did not know the difference between right and wrong. Appellant's intelligence is average for a 17-year-old boy, in terms of ability to think, to handle school work "and that sort of thing." Dr. Deabler had not read appellant's confession and had gained his data largely from a two-hour conference with appellant, and from talking to his attorney. The fact that after appellant originally approached the prosecutrix and her sister, he walked away from them temporarily when a truck approached, indicated a fear of being caught, but the doctor did not believe it indicated a sense of doing something wrong. Appellant is not suffering from any mental disease, but a psychological disorder.

In rebuttal of this testimony, the State offered the chief of police of Biloxi, the assistant chief of police, and a policeman, all of whom had talked with appellant on a number of occasions since he had been in custody, and all of whom said that in their opinions he was entirely sane and knew the difference between right and wrong; and that they had discussed the crime with appellant, and he appeared to realize that what he had done

was wrong. In overruling the motion for a new trial, the court stated that in view of the testimony of the State's witnesses, the psychologist, and his own observation of the defendant, he was satisfied that the net result of their testimony and of the evidence is that defendant knew right from wrong and was and is sane.

██ ██ We think that this conclusion of the trial court is amply warranted. This Court rejected the "irresistable impulse" test of sanity as early as 1879, in Cunningham v. State, 56 Miss. 269. To the same effect are Garner v. State, 112 Miss. 317, 73 So. 50 (1916); Smith v. State, 95 Miss. 786, 49 So. 945 (1909); Eatman v. State, 169 Miss. 295, 153 So. 381 (1934); Anno. 70 A. L. R. 659, and 173 A. L. R. 391; 14 Am. Jur., Criminal Law, Sec. 35; 15 Am. Jur., Criminal Law, Sec. 327; 22 C. J. S., Criminal Law, Sec. 58. We apply the test of the leading English case known as M'Naghten's case, which is the majority rule. 14 Am. Jur., Criminal Law, Secs. 38-40; 22 C. J. S., Criminal Law, Sec. 59; Rogers v. State, No. 39,466, decided January 10, 1955. It is summarized in Eatman v. State, supra:

"In this state, as generally in the several states, the rule of law is that the test of criminal responsibility is the ability of the accused, at the time he committed the act, to realize and appreciate the nature and quality thereof—his ability to distinguish right and wrong. Smith v. State, 95 Miss. 786, 49 So. 945, 946, 27 L. R. A. (N. S.) 461, Ann. Cas., 1912A, 23. And the defense of want of inhibitory powers, or as otherwise expressed, the defense of irresistible or uncontrollable impulse was declared in that case to be unavailable, unless the uncontrollable impulse spring from a mental disease existing to such a high degree as to overwhelm the reason, judgment, and conscience, in which case, as the court adds, the accused would be unable to distinguish the right and wrong of a matter."

The testimony of appellant's own witness, Dr. Deabler, fails to meet these criteria. In fact, Deabler applied the so-called irresistible impulse test, which this Court has rejected. On the contrary, the testimony of the State's witnesses, who have had opportunity to form an opinion about appellant's sanity, amply justified the trial court's finding of sanity and its overruling of the motion for a new trial. ■■■ Considering the entire record on this appeal, including appellant's two signed confessions with their logical and intelligible descriptions of his crime, we think that the trial court was correct in this respect, and certainly it cannot be said to be manifestly wrong.

■■■ Appellant also argues that there has been a systematic exclusion of, and a discrimination against, Negroes in serving on the grand jury and the petit jury, in violation of the rule in Patton v. State, 332 U. S. 463, 68 S. Ct. 184, 92 L. Ed. 76, 1 A. L. R. 2d 1286 (1947). Without detailing the testimony of the only witness offered on this issue, which was not raised until the motion for new trial, it is sufficient to say that the testimony of the Circuit Clerk of Harrison County, Ewert Lindsey, shows without dispute that there has been no systematic exclusion of Negroes from juries in Harrison County, and that, in fact, at practically every term of court Negro jurors are drawn out of the box; and that no effort was made to discriminate either in selecting jurors for the box or on the particular grand jury and petit jury involved in this case, but appellant makes no showing whatever that there was any systematic exclusion of the names of Negroes from the jury box or panels. In fact, the evidence offered by appellant is to the contrary and negatives his allegation.

For these reasons the judgment of the Circuit Court is affirmed.

Affirmed, and Thursday, March 3, 1955, is fixed as the date for execution of the death sentence in the manner provided by law.

All nine of the Judges concur.

ON MOTION OF STATE TO SET NEW DATE FOR EXECUTION

July 15, 1955                                      81 So. 2d 558

ETHRIDGE, J.

Appellant Walter Johnson was convicted in the Circuit Court of Harrison County of the crime of rape, and was sentenced to suffer the death penalty. On January 17, 1955, this judgment of conviction was affirmed by this Court, and March 3, 1955, was fixed as the date for execution of the death sentence. 76 So. 2d 841. Appellant's subsequent suggestion of error was overruled. Johnson then appealed to the Supreme Court of the United States, by petition for writ of certiorari, and execution of the judgment accordingly was stayed. On May 31, 1955, the United States Supreme Court, in Cause No. 741, denied his petition for a writ of certiorari.

Since the date fixed for execution of the sentence in our decision in 76 So. 2d 841 has passed, the State has filed a motion requesting the Court to set a new date for execution of the death sentence. No response has been filed to this motion. After careful consideration, we conclude that the motion should be and it is sustained, and Friday, August 19, 1955, is fixed as the date for execution of the death sentence rendered against appellant, Walter Johnson, in the manner provided by law.

Motion of State to set new date for execution sustained, and Friday, August 19, 1955, fixed as date for execution of death sentence.

All nine of the Judges concur.