SAMUEL LEE DUNNING, APPELLANT *v.*
STATE OF MISSISSIPPI, APPELLEE

No. 43313 February 1, 1965 171 So. 2d 315

768

*Kelly McKoin,* Biloxi, for appellant.

*G. Garland Lyell, Jr.,* Asst. Atty. Gen., Jackson, for appellee.

PATTERSON, J.

The appellant was convicted of the crime of armed robbery in the Circuit Court of Harrison County. The jury was unable to agree upon a sentence and so certified to the court, whereupon the court sentenced the defendant to serve twenty years in the state penitentiary. He appeals to this Court assigning as error the following:

(1) The lower court erred in overruling appellant's motion for a new trial on the grounds that the verdict of the jury was against the overwhelming weight of the evidence.

(2) The lower court erred in failing to quash the indictment against the defendant, in that Negroes were systematically and purposely excluded from the grand jury that indicted him, and from the special venire, in violation of the Fourteenth Amendment to the United States Constitution.

(3) The lower court erred in failing to quash the indictment, as the provisions of Mississippi Code Annotated section 1766 (1956) were not followed in the procurement of jurors for the trial of the case.

(4) The lower court erred in failing to discharge the defendant on the grounds that he was illegally arrested in violation of the Fourteenth Amendment to the United States Constitution and that the court erred in allowing the confessions of the defendant, both oral and written, pistol and articles of clothing, to be introduced to the jury as they were the fruit of this illegal arrest.

(5) The court erred in not dismissing the charge of armed robbery against the defendant for failure of the detaining authorities to give him a prompt preliminary hearing in accordance with the Sixth Amendment to the United States Constitution, Section 26 of the Mississippi Constitution of 1890, and Mississippi Code Annotated section 2473 (1956).

The evidence establishes the following facts: Billy Pierce, a cab driver, had his cab parked at the bus station in the city of Biloxi, Mississippi, at about 2:30 or 3:00 on the morning of September 5, 1963. Appellant approached and entered the cab and requested Pierce to take him to the intersection of Division and Nixon Streets in the city. In compliance with the request of his passenger, Pierce left the bus station accompanied by the appellant, who sat upon the back seat. As they

neared the designated street intersection the appellant directed the driver to stop and let him out. In response to this directive Pierce stopped his cab under a street light, whereupon the appellant placed a pistol to the back of his head and demanded his money. Pierce handed his money to the defendant, who then got out of the vehicle and directed the driver to do likewise. Pierce was then directed at gun point to get inside the trunk of the cab. Upon compliance by Pierce the defendant attempted to close the trunk by slamming the lid down; it failed to catch on the first two attempts. On the third attempt Pierce held the lid of the trunk closed so the defendant would think it was securely locked. Pierce testified that he held the lid down with his hands as he was afraid of being asphyxiated by the fumes of the motor, which was still running, if the lid became securely locked from the outside. This ruse was effective, as the appellant left the premises apparently thinking the lid was securely fastened. When Pierce heard him leave, he opened the trunk lid a slight extent so that he was able to view the immediate area. Immediately thereafter an old model, 1951 or 1952, two-tone green Buick automobile came from the direction in which appellant had gone and passed Pierce in making its getaway. He observed two occupants therein who appeared to be of the colored race. Pierce immediately reported the holdup by radio to the cab company dispatcher who reported the matter to the police, and within minutes there were several policemen on the scene.

Pierce gave the police a general description of the appellant, his race, his size, his approximate age, his clothing, and a particular description of the car used to flee the scene. This information was immediately communicated to the law enforcement officers in the area. In response to this message, two Pascagoula police cars set up a watch at the toll bridge at the western side of the city of Pascagoula. Approximately thirty minutes

thereafter an automobile of the above description and with the license number furnished to the Pascagoula police, with two colored occupants, was seen to stop at the toll bridge gate, pay the toll, and proceed on toward Pascagoula. The officers, after verifying the license number of the car, gave chase. The driver of the car in which appellant was an occupant attempted to elude the officers. The car ran off the road as it left United States Highway 90 and turned into a street in the city of Pascagoula. Both the appellant and the driver of the automobile jumped out and fled with the officers in immediate pursuit. Appellant's companion was wounded, captured and taken to a hospital. The appellant temporarily escaped.

Later, but still very early the same morning, a Negro deputy sheriff of Jackson County, who had been furnished a physical description of the appellant by the officers who had pursued him and from whom he had escaped, observed the appellant as he walked along the highway in an easterly direction toward Mobile within one mile of the abandoned car. The general physical description given this deputy sheriff included the appellant's race, his approximate age, his approximate size and a description of his clothes. After a few preliminary questions appellant was placed under arrest and advised by the deputy that he was arrested for investigation of robbery. He was immediately taken to police headquarters in Pascagoula where he was interrogated by police officers, and where he admitted his participation in the robbery. From the time of his arrest until this oral confession he was constantly in the presence of the deputy sheriff who testified unequivocally that no force, threat, or offer of reward or anything else conducive to obtaining a confession was made or offered to the appellant. Other officers testified to the same effect. The appellant testified, however, that he was told that if his accomplice died as a result of the gunshot wound re-

ceived by him in his attempt to escape the police, that he, the appellant, would be charged with murder, and that he was afraid, the inference being that a feeling of fear or apprehension led to the oral confession, and thus it was not freely and voluntarily given.

Appellant was taken to the police station in Biloxi, Mississippi, and booked. The same morning he gave a written confession as to his participation in the robbery. He was also identified by Pierce as being the person who had robbed him. In addition, Pierce identified a pistol which was taken from the car that appellant and his accomplice abandoned as being similar to the one which was held on him by the appellant.

The appellant was arrested on September 5, 1963, between 6:00 and 7:30 A.M. and was not given a preliminary hearing until September 9, 1963. The record indicates that one of the days between the arrest and the preliminary hearing was Sunday and the Justice of the Peace did not maintain office hours on this day and was not in his office on the Saturday afternoon preceding this Sunday.

The appellant's first assignment of error that the verdict of the jury was against the overwhelming weight of the evidence is not well taken as there is ample, plausible and competent evidence in the record to establish his guilt if believed by the jury.

The second assignment of error that Negroes were systematically and purposely excluded from the grand jury and from the venire is not well taken. The evidence offered in support of the motion to quash the indictment, as well as that in opposition thereto, amply supports the action of the court in overruling this motion as it clearly indicates there was no systematic exclusion of Negroes from the grand and petit juries in Harrison County. This is in accord with *Wilson v. State*, 243 Miss. 859, 140 So. 2d 275 (1962) and *Johnson v. State*, 223 Miss. 56, 76 So. 2d 841, 81 So. 2d 558 (1955), both

of which arise from Harrison County as here, with similar factual situations, and wherein this Court upheld the lower court's decision that there was no systematic exclusion, stating in Wilson *supra* at 866, "There was nothing, prior to the time when they came into the courtroom, to designate jurors by race." We conclude that the question of systematic exclusion poses a factual situation that must be determined by the particular facts of each case as they arise from the various counties of the state. *Cameron v. State,* 233 Miss. 404, 102 So. 2d 355 (1958). Long-continued omission of Negroes from jury service establishes a prima facie case of systematic discrimination. The burden of proof is then upon the State to refute it. *Harper v. State,* 251 Miss. 199, 171 So. 2d 129. We have no such question here, as Wilson *supra* and Johnson *supra* negate long-continued omission of Negroes from the jury. Under these circumstances the burden of proof did not shift to the State of Mississippi to refute systematic discrimination, but rather remained the burden of the defendant. He did not meet this burden and the court committed no error in overruling the motion to quash the indictment and the venire.

 █ Appellant argues further, however, that since the tax assessor of the county, the custodian of homestead exemption records, had not been called upon by the board of supervisors to produce his tax assessment rolls for their benefit in selecting jurors who were "freeholders," as provided by Mississippi Code Annotated section 1762 (Supp. 1962), since partially amended by House Bill Nos. 937 and 953, General Laws of Mississippi, 1964, that Negro freeholders were thereby systematically excluded. We find no merit in this contention as the testimony of the tax assessor was unequivocal that the names of freeholders were not requested by the board of supervisors nor supplied by him to the board. Though the appellant argues discrimination, the

error of the board, if any, is that of omission since no freeholders of either race were called. There was no discrimination as the exclusion or omission was to both races without regard to either.

The appellant's next assignment of error is that the lower court should have quashed the indictment as the provisions of Mississippi Code Annotated section 1766 (1956) were not followed in the procurement of jurors for the trial of the case, inasmuch as the supervisors used a clerk to aid them in the jury selection process. The evidence reflects that this clerk was used to check the names of the prospective jurors submitted to her to see that they were not ineligible for jury service as having served within the last two years, and following this check and after the deletion of those who had served within two years, and after approval by the members of the board, the list was written on the minutes of the board. We find no error in this procedure nor do we construe this section as being so limited that clerical aid cannot be used by the board of supervisors in the mere mechanical preparation of the jury list. There is no evidence to show that the appellant was prejudiced by this procedure or that the jury was not impartial. The provisions of the law in relation to the list, drawing, summoning, and impaneling juries are directory. Mississippi Code Annotated section 1798 (1956); *Smith v. State*, 242 Miss. 728, 137 So. 2d 172 (1962). There being no delegation of the board's power in the selection of jurors, the acts of the clerk were administrative only and not prejudicial to this appellant.

The next assignment of error, that the lower court erred in failing to discharge the defendant on the grounds that he was illegally arrested in violation of the Fourteenth Amendment to the United States Constitution and that the court erred in admitting the confessions of the defendant, both oral and written, pistol and articles of clothing, into evidence as they were the fruit of this

illegal arrest, is based upon the case of *Gatlin v. United States,* 326 F. 2d 666 (D.C. Cir 1963) wherein that court held Gatlin's arrest was without probable cause as it was an arrest for investigation, stating, "The only evidence on which the arrest was predicated was the fact that there was a robbery, that one of the robbers was a Negro wearing a trench coat, that a Negro man fled from a taxi, and that Gatlin, a Negro man, was observed walking down the street a mile and half from the robbery wearing a trench coat. This is not the type of evidence which could justify deprivation of liberty."

We are of the opinion that Gatlin is not controlling here for the reason Officer White was directed by his superior to be on the lookout for a suspect wanted for robbery. A description of this suspect was given to White which included, in addition to the fact that he was a colored male, the approximate age, the approximate size, the wearing apparel and the fact that he was bare-headed. Thus the arresting officer had official information, not only as to the description of the suspect, but also official information as to the crime perpetrated and also an official order directing him to aid other officers in the search for this suspect. Under these facts and circumstances we are of the opinion and so hold that Officer White had probable and reasonable cause to arrest the appellant. *Fuqua v. State,* 246 Miss. 191, 145 So. 2d 152 (1962); *Clanton v. State,* 242 Miss. 734, 137 So. 2d 180 (1962); *Shay v. State,* 229 Miss. 186, 99 So. 2d 209 (1956); and *Bell v. United States,* 102 U.S. App. D.C. 383, 388, 254 F. 2d 82, 87 (1957) cert. denied, 358 U.S. 885, 79 S. Ct. 126, 3 L. Ed. 2d 113 (1958) wherein the following principle is stated: "The sum total of the reams that have been written on the subject is that a peace officer may arrest without a warrant when he has reasonable grounds, in light of the circumstances of the moment as viewed through his eyes, for belief that a felony has been committed and

that the person before him committed it.'' The introduction of the oral confession, the written confession, the pistol and articles of clothing, was not improper under the appellant's theory that they were the fruit of an illegal arrest, as White had reasonable grounds in the light of the circumstances to make the arrest.

 The next and final assignment of error is that the court erred in failing to dismiss the charge of armed robbery as, it is argued, the appellant was not given a prompt preliminary hearing in violation of the Sixth Amendment to the United States Constitution, Section 26 of the Mississippi Constitution of 1890, and Mississippi Code Annotated section 2473 (1956). It is noted that this assignment of error alleges error upon the part of the lower court in not discharging the appellant for failure of the arresting officers to promptly bring the appellant before a judicial officer for preliminary hearing. The record reflects the defendant was arrested on the morning of September 5, 1963; that he was given a preliminary hearing on September 9, and that one of the intervening days was the Sabbath; and that the judicial officer before whom the preliminary hearing was had did not keep office hours on Saturday afternoons, thus leaving unexplained three and one-half days in which there could have been a preliminary hearing. Assuming, but not deciding, this interval to be undue delay, we are cited no authority to the effect that such delay entitled the victim thereof to an outright discharge, and we do not understand the case of *Mallory v. United States,* 354 U.S. 449, 1 L. Ed. 2d 1479, 77 S. Ct. 1356 (1957) in construing the requirements of Rule 5(a) of the Federal Rules of Criminal Procedure to so hold. *Mallory* deals with the admissibility of confessions. The confessions here were made prior to the unlawful detention, if any. Without the confessions the overwhelming weight of the evidence reflects defendant's guilt.

 Assuming this delay to be unreasonable, the

illegal delay would not be retroactive so as to vitiate the legal evidence theretofore obtained. In *United States v. Mitchell,* 322 U.S. 65, 64 S. Ct. 896, 88 L. Ed. 1140 (1944) though discussing a Federal rule we find, ''Here there was no disclosure induced by illegal detention, no evidence was obtained in violation of any legal rights, but instead the consent to a search of his home, the prompt acknowledgement by an accused of his guilt, and the subsequent rueing apparently of such spontaneous cooperation and concession of guilt.

''But the circumstances of legality attending the making of these oral statements are nullified, it is suggested, by what followed. For not until eight days after the statements were made was Mitchell arraigned before a committing magistrate. Undoubtedly his detention during this period was illegal. The police explanation of this illegality is that Mitchell was kept in such custody without protest through a desire to aid the police in clearing up thirty housebreakings, the booty from which was found in his home. Illegality is illegality, and officers of the law should deem themselves special guardians of the law. But in any event, the illegality of Mitchell's detention does not retroactively change the circumstances under which he made the disclosures. These, we have seen, were not elicited through illegality. Their admission, therefore, would not be used by the Government of the fruits of wrongdoing by its officers.'' And see Harper v. State *supra, Parker v. State,* 244 Miss. 332, 141 So. 2d 546 (1962), and *Upshaw v. United States,* 335 U.S. 410, 69 S. Ct. 170, 93 L. Ed. 100, 168 F. 2d 167 (1948). We are of the opinion and so hold that the court was not in error in refusing to summarily dismiss the appellant as urged in this assignment of error.

We have carefully considered the record and find no prejudicial error therrein. The cause is therefore affirmed.

Affirmed.

*Kyle, P. J., Ethridge, Gillespie and Rodgers, JJ.,* concur.