210 So.2d 887 (1968)
Willie Edward KING
v.
STATE of Mississippi.
No. 44822.
Supreme Court of Mississippi.
May 27, 1968.
L. Lackey Rowe, Jr., Jackson, for appellant.
Joe T. Patterson, Atty. Gen., by Guy N. Rogers, Asst. Atty. Gen., Jackson, for appellee.
JONES, Justice:
Appellant was indicted, tried, and convicted of grand larceny in the Circuit Court of Quitman County for stealing an automobile belonging to one Ed Ellis of Quitman County. Appellant was sentenced to a term of three years in the penitentiary. He appeals and we affirm.
Appellant's assignments of error involve:
(1) Alleged systematic exclusion of negroes from the grand and petit jury venires.
(2) Section 1766, Mississippi Code 1942 Annotated (Supp. 1966) providing for selection of names for the jury list as being too broad and vague and vesting too much discretion in the Board of Supervisors.
(3) Section 1762, Mississippi Code 1942 Annotated (Supp. 1966) as unconstitutional because excluding women from jury service.
(4) Failure to grant a mental examination pursuant to Section 2575.5 of Mississippi Code 1942 Annotated (Supp. 1966).
(5) Failure to permit appellant to select a psychiatrist for aid in his defense, at the expense of the county.
(6) Insufficiency of the evidence.
The second assignment of error is eliminated from consideration by this Court's *888 ruling on that contention in Reed v. State, 199 So.2d 803, 806 (Miss. 1967).
The third assignment of error is not considered because of a number of decisions on the exact point by this Court. See Shinall v. State, 199 So.2d 251 (Miss. 1967); Pendergraft v. State, 191 So.2d 830 (Miss. 1966); State v. Hall, Miss., 187 So.2d 861 (1966); and others.
The fourth and fifth assignments of error are so connected that they will be considered together. Section 2575.5, Mississippi Code 1942 Annotated (Supp. 1966), enacted at the 1960 legislative session as chapter 262 of Mississippi Laws 1960, is as follows:
In any criminal action in the circuit court in which the mental condition of a person indicted for a felony is in question, the court or judge in vacation on motion duly made by the defendant, the district attorney or on the motion of the court or judge, may order such person to submit to a mental examination by a competent psychiatrist selected by the court to determine his ability to make a defense; provided, however, any cost or expense in connection with such mental examination shall be paid by the county in which such criminal action is pending.
Acting thereunder, appellant's attorneys filed the following motions:
WILLIE EDWARD KING, defendant in this case, by his attorneys, files a suggestion of insanity and moves for a mental examination of defendant prior to a determination of the merits of this case. Said examination should be conducted by a competent psychiatrist selected by the Court whose expenses should be borne by the County.
AS GROUNDS therefor, defendant states that he is a chronic alcoholic and has no recollection of the incidents on which the charges in this case are based. By virtue of this lack of recollection, it is reasonably probable that defendant is unable to plead or conduct a rational defense or testify in his own behalf,
all as is shown more fully in the attached affidavits.
WHEREFORE, defendant moves for a mental examination to determine his competency to stand trial.
and
WILLIE EDWARD KING, defendant, respectfully moves this Court to provide him with a competent psychiatrist, of his own choosing, to make a mental examination of him to determine his ability to stand trial.
In support thereof defendant says:
(1) He is a Negro indigent unable to pay or otherwise obtain psychiatric help;
(2) He is presently a prisoner in the Quitman County Jail, charged with a felony allegedly committed in Quitman County;
(3) He remembers nothing concerning the felony he allegedly committed. It is reasonably probable, therefore, that he cannot properly defend himself or rationally confer with his attorneys about the facts; and
(4) He wants and believes that he is entitled to an impartial examination by a psychiatrist of his own choosing. To deny him such an examination will deny him due process of law and equal protection of the laws guaranteed by the Fourteenth Amendment of the United States Constitution.
With the motions were affidavits by the attorney for appellant and by appellant's mother. The only facts stated were that appellant was nervous, he was a chronic alcoholic, and he allegedly failed to remember the crimes he had committed.
It is apparent the statute was intended to cover the mental condition of persons charged with crime. The first part of the *889 first motion above calls it a "suggestion of insanity," but as grounds therefor, it was stated appellant was a chronic alcoholic and had no recollection of the facts relative to the charges in this case.
Testimony as to both motions was taken before the judge of the lower court and there was evidence to contradict the affidavits wherein they stated he had no recollection of the events. The mother testified and the basis of her evidence was that he was "different" when he returned from the army and that he would do things wrong and not remember.
A witness named Moss was introduced. On his first appearance on the stand, he could only say appellant was "off" and could give no facts on which to base such an allegation. The next day he was asked to tell of "strange" things appellant did. Witness said when he was living at Parchman (location of the State penitentiary), appellant would slip over to see a little twelve year old girl. Her mother told appellant not to return, but he did; the mother pointed a gun at the appellant but he was not scared. The witness also said that appellant would mix in the fights and arguments of others, claiming himself to be the best man. Again while in jail at Marks he came to the cafe with the jail keys and threw them in the heater. The keys were retrieved. Later on appellant fell out.
One of the appellant's attorneys told of interviews with him in jail. The attorney said that the appellant's speech was bad, that he was nervous, and that he would shake as if cold. The witness said there were no more gaps or omissions in the appellant's story than usual except as to several alleged crimes which appellant had committed and did not recollect.
The state offered four witnesses whose evidence tended to contradict that of the defense witnesses as to inability of the appellant to recall. These witnesses also expressed the opinion that appellant knew right from wrong and was normal.
The deputy sheriff testified that appellant acted perfectly normal and, in fact, told him about taking the automobile some eight or nine hours afterwards. The deputy said the appellant seemed to remember everything about it. Appellant also told the deputy about the incidents in Moss's place which occurred after he had been drinking. Mr. Ellis, the owner of the automobile, said he was at the preliminary hearing and that appellant there admitted to him he took the car. On the night of the alleged theft, one Ingram rode in the stolen car with appellant, and appellant told him he had stolen the car. Ingram couldn't tell appellant was drinking but thought he had had a little to drink.
On this proof the lower court announced its ruling:
The Court has listened very carefully to all of this testimony and had the advantage of seeing and hearing the witnesses, and seeing the demeanor of the witnesses and of the defendant. The Court does not think that there is a reasonable probability that the defendant does not know right from wrong, or that he cannot assist his counsel in conducting a rational defense. Therefore, the motion is overruled. The defendant will now be arraigned.
Section 2575.5 makes no provision for the appointment of a psychiatrist chosen by the defendant. There has been no discrimination by the state on this issue. When the invocation of the aid of this statute has been sustained, the movant, regardless of status, has been committed to the State Hospital for the Insane for examination by its staff. Neither the competency of the psychiatrists there nor their integrity has been questioned.
We affirm the action of the lower court for several reasons:
(1) The statute is applicable in cases of insanity. The affidavit did not charge insanity; it only charged that appellant was a chronic alcoholic.

*890 (2) The issue was one of fact decided by the trial judge who has a reasonable discretion based on the facts. Jacquith v. Beckwith, 248 Miss. 491, 501, 157 So.2d 403, 408 (1963). There was substantial evidence to support his ruling.
(3) The court has, and should have the right to select the psychiatrist upon whom it is to depend.
(4) Voluntary intoxication is no excuse for crime, but may be a circumstance for consideration by the jury on a question of intent. Melton v. State, 155 Miss. 659, 124 So. 802 (1929); Edwards v. State, 178 Miss. 696, 174 So. 57 (1937); Gaddis v. State, 207 Miss. 508, 42 So.2d 724 (1949).
The defendant was granted this instruction:
The Court instructs the jury for the defendant that unless you believe beyond a reasonable doubt that defendant knew what he was doing  that is, was sober enough to know what he was doing  when he took the car, you must find the defendant not guilty.
The first assignment of error involves a motion to quash the indictment on grounds of systematic exclusion of Negroes from the jury lists.
It was stipulated that the population of Quitman County as shown by the 1960 census was:

 Total 21 and over 9,849
 Non-white males 2,630
 White males 2,050

The non-whites constituted fifty-six percent of these eligible for jury service at that time (1960).
It was also stipulated that for the years 1956 through 1965 the jury lists were five percent Negro and ninety-five percent white. The jury list compiled in April 1966 (from which the grand and petit juries here involved were drawn), as shown by the evidence, was:

 Negroes 83
 Whites 268
 Unknown 7
 ____
 TOTAL 358

The percentage of Negroes rose to 23.6 on the list. At the September Term 1966 the grand jury consisted of eight Negroes and nine whites.
At the March Term 1967 at which appellant was tried, 123 names were drawn for jury service  twenty-one percent were Negroes. The grand jury which indicted appellant had seventeen percent Negroes. The petit juries for the first week of the March Term were twenty percent Negro and two Negroes served on the jury which convicted appellant.
It is apparent from these figures that the officers of Quitman County have been endeavoring to discharge their duties in accordance with the laws as announced in recent years, for which they are to be congratulated.
The evidence of the circuit clerk was that there was never, so far as she knew, a federal registrar in her county; that she registered people when they sought to register; that they were all on the same book and lists, with none marked delinquent because of unpaid poll tax; and that no person was interfered with when he tried to register.
The Supervisors of Quitman County each testified he made his list to go into the jury box from the list furnished by the clerk, with nothing thereon denoting either race or delinquency because of due poll taxes. The supervisors went over the list and the only ones purposely excluded were those exempted from jury service, unable to serve because of sickness, or otherwise disqualified. They also said they used the list of those qualified to vote in both Federal and State elections. They endeavored to follow the law by selecting people qualified *891 under the law. The attorney for the Board of Supervisors appeared before it and instructed them on the preparation of the list under the new laws.
The supervisors also testified that since the 1960 census more Negroes than whites had emigrated to other states to secure work, and, therefore, the ratio as shown by the 1960 census was not the same as it would be in 1966. On these facts, the lower court correctly, in our opinion, overruled the motion to quash. For decisions on analogous facts, see Dunning v. State, 251 Miss. 766, 171 So.2d 315 (1965), cert. denied 386 U.S. 993, 87 S.Ct. 1310, 18 L.Ed.2d 339 (1967); Shinall v. State, 199 So.2d 251 (Miss. 1967), cert. denied 389 U.S. 1014, 88 S.Ct. 590, 19 L.Ed.2d 660 (1967); Reed v. State, 199 So.2d 803 (Miss. 1967), cert. denied 390 U.S. 413, 88 S.Ct. 1113, 19 L.Ed.2d 1273 (1968); Davis v. State, 204 So.2d 270 (Miss. 1967).
The last assignment to be discussed is that the evidence was insufficient to support the verdict. Venue was shown to be proper and the value of the stolen automobile was proved to be more than the sufficient amount.
Mr. Ed Ellis, who lived near O.B. Guest's Plantation on which appellant lived, owned a 1966 Buick Electra four-door hardtop automobile. One night he left it in his driveway of his home which was about three miles south of Lambert in Quitman County. The next day it was found abandoned about four miles north of Charleston and about twenty-five miles from Lambert. It was on the side or bank of the road with doors open, windows down, switch on, lights on but not burning because the battery had run down, and an empty gasoline tank. When the car was left in the driveway by Mr. Ellis, the gas tank was approximately one-quarter full. Tracks indicated that when the automobile was removed from the driveway where parked, it ran into the ditch and had been pulled out by a tractor owned by Mr. Guest. The tractor still had the chain on it. Mr. Ellis had given no one permission to move or use the car. Appellant was captured that afternoon, running across or around Mr. Guest's field, which was surrounded by people searching for him.
The appellant had made no effort to return the car nor to advise Mr. Ellis what happened. Some two or three weeks afterwards, Mr. Ellis received a letter from the jail at Marks signed Willie King, in which appellant stated he was very sorry for what he had done and if Mr. Ellis would get him out of jail, he would work and pay for the damages.
Appellant told on the night of the taking that he had stolen the car. A salesman from Batesville, Mississippi, saw appellant the morning after the car was taken walking about fourteen miles from Charleston. He picked him up and carried him to Crowder. They talked and, as far as the witness could tell, appellant was sober. The appellant did not testify. His witnesses only told of his drinking the evening the car was taken, and one testified he said he would go tell Mr. Ellis. Except for the letter mentioned previously, no showing was made that appellant ever attempted to contact Mr. Ellis or to return the car.
Appellant argues the record contains no evidence to support the charge that he intended to convert the car to his own use permanently. Also he contends that he was too intoxicated to be able to form an intent.
We consider these facts sufficient to present a jury question on both issues and the jury was fully instructed.
Appellant secured two instructions requiring the jury to believe beyond a reasonable doubt appellant "specifically intended" to steal the car. The first instructed the jury that if they believed the appellant was drunk when he took the car, then they must believe beyond a reasonable doubt that he specifically intended to steal the car before he became drunk. The second instructed the jury that unless they believed *892 beyond a reasonable doubt that he was sober enough to know what he was doing when he took the car, they must acquit. See Melton v. State, supra; Gaddis v. State, supra.
No requested instructions were refused appellant.
Affirmed.
ETHRIDGE, C.J., and RODGERS, BRADY and SMITH, JJ., concur.