KITCHENS, PRESIDING JUSTICE, DISSENTING:
 

 ¶27. The majority erroneously affirms the trial court's denial of Parker's motion for a mental evaluation, finding the evidence insufficient. Because Parker made a satisfactory showing concerning the question of his sanity, the trial court abused its discretion. I respectfully dissent from the majority's holding and would find that Parker's
 
 pro se
 
 motion for a mental evaluation should have been granted.
 

 ¶28. On January 28, 2016, Eric and Edna Burkett were outdoors when Parker, driving a white pickup truck, stopped in front of their home. The Burketts, who did not know Parker, asked whether they could help him. The Burketts testified that Parker was acting "a little strange." He had started "talking in a strange language" and "mumbling incoherently." Parker took a .22 caliber rifle from his truck and fired three shots at the Burketts, one of which struck Eric Burkett in the stomach. A neighbor of the Burketts called the police.
 

 ¶29. Approximately fifteen minutes later, law enforcement officers found Parker's truck in a ditch less than half a mile
 from the Burketts' home. He was sitting in the vehicle and its tires were spinning. Parker did not try to flee when officers ordered him to exit the truck. A police officer testified that, when Parker stepped out of his vehicle, he "stood there and stared at [the officer]." The police officer went on to testify that Parker "was kind of wobbly" and had difficultly standing straight, ultimately falling to the ground. Parker then was arrested.
 

 ¶30. At the police station that night, a detective chose not to try to obtain a statement from Parker. According to the detective, one of the reasons she did not interview Parker was because of her belief that his statement could not have been voluntarily or knowingly made at that time. She speculated that Parker might have been under the influence of some substance. No evidence was obtained from the vehicle or the scene that supported this suspicion. Parker's blood was not tested for alcohol or drugs. On the following day the detective obtained a handwritten statement from Parker that said, simply, "I don't no [sic] victim. Don't even no [sic] victim. All I remember is sitting spinning." After meeting with Parker, the detective recommended that mental health personnel evaluate him.
 

 ¶31. A brief evaluation did occur the day after the incident. The report stated that Parker had been treated for depression and anxiety for years and that his current medications were Wellbutrin, Viibryd, and Xanax. The report did not address Parker's mental state on the night of the incident, and nothing suggests that the evaluation was performed to assess his mental competency to stand trial. The report was prepared by a person whose name is followed by "LPC," which I believe stands for Licensed Professional Counselor, and "NCC," which I believe stands for National Certified Counselor. She recommended that Parker be seen by a "medical provider at the jail for placement on medications treating his [symptoms] of anxiety and depression."
 

 ¶32. During a pretrial hearing in circuit court, Parker told the trial judge that he had no recollection of the shooting and did not know whether he had committed the crime. Parker told the judge that he wanted a mental evaluation to support an insanity defense. The court gave Parker an opportunity to prepare his motion, which he drafted by 5:00 p.m. the following evening.
 
 [9]
 
 A few days later, Parker argued his own motion to the court.
 

 ¶33. Parker began his argument by reading his three-page motion. The motion asserted that, at the time of the offense, Parker "was in no right state of mind" and was not "able to know right from wrong." Parker's motion noted that arresting officers had described him as "belligerent" and had thought that he "appeared to be under the influence of some type of drug or alcohol." The motion noted also that the Burketts had told police that he was "talking in a strange language" and "mumbling incoherently." Parker's motion stated further that he had been treated for depression and anxiety and had been prescribed Wellbutrin, Viibryd, and Xanax. Finally, Parker requested a mental examination and an expert to testify in support of his insanity defense.
 

 ¶34. After reading his motion aloud, Parker testified to a history of mental-illness-related hospitalizations, the names or locations of medical facilities at which he had
 received treatment, a prior suicide attempt, and a number of medications he had taken over the years for anxiety, depression, and psychosis. Parker also testified that, at the time he assaulted the Burketts, he was under a doctor's care and on medication for anxiety and depression. In addition, Parker testified that he received Social Security disability benefits for physical and mental issues. Parker testified he had no idea whether he had been under the influence of alcohol or drugs.
 

 ¶35. Throughout the hearing, the circuit judge focused on Parker's mental competency to stand trial rather than on his alleged insanity at the time of the offense.
 
 [10]
 
 Parker made it clear that he was not questioning his competency to stand trial.
 
 [11]
 
 Ultimately the circuit court denied Parker's motion: "I find that Mr. Parker is competent to stand trial at this time, and the trial will go forward on Thursday[.]" Parker was tried, convicted, and sentenced. A plurality of the Court of Appeals affirmed; the Court of Appeals was evenly divided-almost; one judge voted, without opinion, to affirm in part and dissent in part.
 
 [12]
 

 Parker v. State
 
 , No. 2016-KA-01502-COA, --- So.3d ----, ----, ----,
 
 2018 WL 1602585
 
 , at *1, *7 (Miss. Ct. App. Apr. 3, 2018).
 

 ¶36. A trial court's ruling on a motion for a mental evaluation is reviewed under an abuse of discretion standard.
 
 Wheeler v. State
 
 ,
 
 536 So.2d 1347
 
 , 1354 (Miss. 1988). In doing so, we examine "all of the evidence" that was before the trial court.
 
 Richardson v. State
 
 ,
 
 74 So.3d 317
 
 , 323 (Miss. 2011). We also determine whether the trial court "applied the correct legal standard."
 
 Greater Canton Ford Mercury, Inc. v. Lane
 
 ,
 
 997 So.2d 198
 
 , 202 (Miss. 2008) (quoting
 
 Burkett v. Burkett
 
 ,
 
 537 So.2d 443
 
 , 446 (Miss. 1989) ).
 

 ¶37. Parker's motion for a mental evaluation raised specifically the issue of his sanity at the time of the offense. In determining sanity in criminal cases Mississippi utilizes the common law
 
 M'Naghten
 
 test.
 
 [13]
 

 "Under the
 
 M'Naghten
 
 test, the accused must be " 'laboring under such defect of reason from disease of the mind as (1) not to know the nature and quality of the act he was doing or (2) if he did know it, that he did not know that what he was doing was wrong.' "
 
 Hearn v. State
 
 ,
 
 3 So.3d 722
 
 , 738 (Miss. 2008) (quoting
 
 Woodham v. State
 
 ,
 
 800 So.2d 1148
 
 , 1158 (Miss. 2001) (quoting
 
 Roundtree v. State
 
 ,
 
 568 So.2d 1173
 
 , 1181 (Miss.1990) )).
 

 ¶38. We apply the
 
 M'Naghten
 
 test in light of the minimum constitutional protections afforded by the due process of law provisions of the Fourteenth Amendment to the United States Constitution; our analysis necessarily is bound by the United States Supreme Court's interpretation of that amendment.
 
 See
 

 Penick v. State
 
 ,
 
 440 So.2d 547
 
 , 551 (Miss. 1983) ("[W]e [are] bound to follow the holding of the U.S. Supreme Court's interpretations of the Fourt[eenth] Amendment to the U.S. Constitution.");
 
 see also
 
 , Miss. Const. art. 6, § 155.
 
 [14]
 
 Respecting the question of an indigent defendant's claim of insanity at the time of the offense, the United States Supreme Court has held
 

 This Court has long recognized that when a State brings its judicial power to bear on an indigent defendant in a criminal proceeding, it must take steps to assure that the defendant has a fair opportunity to present his defense. This elementary principle, grounded in significant part on the Fourteenth Amendment's due process guarantee of fundamental fairness, derives from the belief that justice cannot be equal where, simply as a result of his poverty, a defendant is denied the opportunity to participate meaningfully in a judicial proceeding in which his liberty is at stake....
 

 ....
 

 We therefore hold that when a defendant demonstrates to the trial judge that his sanity at the time of the offense is to be a significant factor at trial, the State must, at a minimum, assure the defendant access to a competent psychiatrist who will conduct an appropriate examination and assist in evaluation, preparation, and presentation of the defense.
 

 Ake v. Oklahoma
 
 ,
 
 470 U.S. 68
 
 , 76, 83,
 
 105 S.Ct. 1087
 
 , 1092-96,
 
 84 L.Ed. 2d 53
 
 (1985).
 

 ¶39. Before the Court is the question of whether Parker sufficiently demonstrated to the trial judge that his sanity at the time of the offense was "seriously in question."
 

 Id.
 

 at 82
 
 ,
 
 105 S.Ct. 1087
 
 . In analyzing this issue, we review the evidence that was before the circuit court.
 

 A. Evidence Considered by the Circuit Court
 

 ¶40. As noted above, Parker submitted a
 
 pro se
 
 motion for mental evaluation and testified in support of his motion. Parker testified about his history of mental-illness-related hospitalizations, the names or locations of medical facilities at which he had received mental health treatment, a prior suicide attempt, and a number of medications he had taken over the years for anxiety, depression, and psychosis. Some of the prescribed drugs Parker testified he had taken were Wellbutrin, Viibryd,
 and Xanax. Parker testified also that, at the time he assaulted the Burketts, he was under a doctor's care and was on medicine for anxiety and depression.
 
 [15]
 
 In addition, Parker testified that he received Social Security disability benefits for physical and mental issues. Finally, Parker testified that he had no recollection of what had happened during the shooting and that he did not remember having been there.
 

 B. Evidence Not Considered by the Circuit Court
 

 ¶41. The circuit court made no mention of having considered any of the following additional evidence before denying Parker's motion. Parker testified that the arresting officers had described him as "belligerent" and had thought that he "appeared to be under the influence of some type of drug or alcohol." Accordingly, law enforcement personnel did not attempt to obtain a statement from Parker on the night he was taken into custody. Parker also testified that Eric Burkett had said that Parker was "talking in a strange language and mumbled." Parker further testified that Edna Burkett had said Parker was "mumbling" and had "continued to mumble someone's name."
 

 ¶42. The circuit court did not consider that evidence because it determined,
 
 sua sponte
 
 , that all of the statements were inadmissible hearsay: "[W]hat you've done, Mr. Parker, is [that] you [have] cited a bunch of people and what they allegedly said, but they're not in the courtroom, and that's hearsay.... and I don't see that there's an exception to the rule against hearsay." With respect, the trial judge was mistaken in his evidentiary analysis.
 

 ¶43. "Hearsay" is defined as "a statement that (1) the declarant does not make while testifying at the current trial or hearing; and (2) a party offers in evidence to prove the truth of the matter asserted in the statement." M.R.E. 801(c). Parker did not offer into evidence the above statements to prove the truth of the matters asserted.
 
 [16]
 
 He was not trying to prove that he was "under the influence of some type of drug or alcohol" or that he actually was "talking in a strange language" and "mumbling." He offered the statements to prove, as best he could, his state of mind at the time of the offense. M.R.E. 803(3) (Then-Existing Mental, Emotional, or Physical Condition).
 

 ¶44. Under the applicable exception, Mississippi Rules of Evidence 803(3), statements "offered to prove the defendant's state of mind, rather than the truth of [the matters] assert[ed] .... [are] not hearsay under the Mississippi Rules of Evidence."
 
 Peterson v. State
 
 ,
 
 671 So.2d 647
 
 , 657 (Miss. 1996),
 
 superseded by rule on other grounds as recognized in
 

 Caston v. State
 
 ,
 
 949 So.2d 852
 
 , 855-56 (Miss. Ct. App. 2007).
 
 See generally
 

 Eselin-Bullock & Assocs. Ins. Agency, Inc. v. Nat'l Gen. Ins. Co.
 
 ,
 
 604 So.2d 236
 
 , 242 (Miss. 1992).
 
 See also
 

 United States v. Detrich
 
 ,
 
 865 F.2d 17
 
 , 21 (2d Cir. 1988) (when "the statement is offered as circumstantial evidence of [the defendant's] state of mind, it does not fall within the definition" of hearsay);
 
 Lambert v. State
 
 ,
 
 888 P.2d 494
 
 , 501 (Okla. Crim. App. 1994) ("The record also contains
 testimony from Dr. Goodman that his conversations with Hain were relied upon in determining [the defendant's] competency, and evaluating his mental state. There is no assertion that the information related by Goodman was offered to prove the truth of the matter asserted. Rather, the statement was used to evaluate [the defendant's] state of mind ....");
 
 State v. Crafts
 
 ,
 
 226 Conn. 237
 
 ,
 
 627 A.2d 877
 
 , 886 (1993) ("A statement that is offered to establish circumstantially the state of mind of the declarant is not offered for the truth of the statement.").
 

 ¶45. The majority finds that Parker offered the out-of-court statements for the purpose of proving that he was, in fact, belligerent, incomprehensible, and generally unable to control himself,
 
 inter alia
 
 . The majority asserts this properly was deemed inadmissible hearsay without exception, and distinguishes the above-cited cases illustrating the state-of-mind exception.
 

 ¶46. However, the record makes clear that Parker did not offer the statements to prove truth of the matter asserted, nor did he offer them to prove his sanity, or lack thereof. The out-of-court statements were offered to show Parker's state of mind during and soon after his bizarre, motiveless assault on the Burketts. He had no recollection of the events, but other witnesses did. This was apparent from Parker's testimony at the pretrial hearing:
 

 [Court]: ... I want you to tell me what it is about this case and your involvement in it that could convince me that you have a mental condition, that leads you to be incompetent to stand trial or to assist your attorneys in the defense of your case?
 

 ....
 

 [Defendant]: ... I have no recollection of any idea of what I was doing in Palmer's Crossing that night. I don't even remember being there. I don't have any recollection of what happened.
 
 My mental capability at that time of said crime, I have no idea. I was not even at myself. I mean there's people that put -- that state this, and me, myself, I have no recollection
 
 . That's a 24-hour period of time that when I was brought to Forrest County Jail and then woke up the next morning in the holding cell.
 

 (Emphasis added.)
 

 ¶47. These contemporaneous statements of Parker's are about his then-existing mental, emotional, or physical condition at the time of the shooting. Parker testified he had no awareness or memory of his actions. It does not follow that the statements were offered to prove the fact of his
 
 behavior
 
 -as the majority finds. The out-of-court statements provided by several witnesses relate to Parker's mental condition or state of mind at the time of and soon after the tragic shooting. Nor does the fact that Parker testified about what others witnessed preclude the statements' admissibility. These statements are the kind contemplated by Rule 803(3), a well-known exception to the rule against hearsay.
 

 ¶48. From all indications, Parker was lucid and rational at the time he stood before the trial court and begged for a mental health evaluation by a court-appointed expert. Parker did not claim that he was mentally incompetent to stand trial or to assist counsel with his defense. Thus, the trial judge was addressing a question that was not being asked, while leaving unanswered the all-important question of whether Parker had made a sufficient showing of his state of mind at the time of his assault upon the Burketts to warrant a mental health examination by a qualified, court-appointed mental health professional. The judge's failure to consider Parker's rendition of relevant witness statements made in close proximity in time to the
 assault was error which was, in significant part, due to the judge's erroneous belief that the statements were inadmissible hearsay.
 

 C. Application of the Rule to the Evidence Presented
 

 ¶49. Parker demonstrated to the trial judge that his sanity at the time of the offense was "seriously in question."
 
 Ake
 
 ,
 
 470 U.S. at 82
 
 ,
 
 105 S.Ct. 1087
 
 . To that end, Parker adduced the following evidence:
 

 • Parker had no recollection of what had happened on the night of the crime. This was neither questioned nor rebutted by the State.
 

 • Parker did not remember being at the scene of the crime. This was not contradicted.
 

 • Parker had said, without contradiction, that he did not know the victim, Eric Burkett.
 

 • There was no indication that Parker had any motive to shoot Eric Burkett.
 

 • The investigating officer believed that Parker, on the night of the crime, was not in a state of mind in which he knowingly and voluntarily could give a statement.
 

 • The arresting officers described Parker as "belligerent."
 

 • The arresting officers thought Parker "appeared to be under the influence of some type of drug or alcohol."
 

 • The Burketts observed Parker "talking in a strange language" and "mumbling."
 

 • Parker had a history of mental illness.
 

 • In the past, Parker had been taking a number of medications for anxiety, depression, psychosis, and mental illness, including Wellbutrin, Viibryd, and Xanax.
 

 • Parker told the LPC/NCC examiner that he was taking prescribed medications for anxiety and depression.
 

 • Parker had attempted suicide on a prior occasion.
 

 • Parker had been receiving Social Security disability benefits for physical and mental illness.
 

 ¶50. Based on the above evidence, I would find that Parker more than adequately "demonstrate[d] to the trial judge that his sanity at the time of the offense [was seriously in question.]"
 
 [17]
 

 Id.
 

 at 82-83
 
 ,
 
 105 S.Ct. 1087
 
 , 1096.
 
 See also
 

 Liles v. Saffle
 
 ,
 
 945 F.2d 333
 
 , 341 (10th Cir. 1991) (similar evidence required
 
 habeas
 
 relief for trial court's failure to order mental evaluation under
 
 Ake
 
 );
 
 De Freece v. State
 
 ,
 
 848 S.W.2d 150
 
 , 151 (Tex. Crim. App. 1993) (evidence that defendant "heard voices he 'couldn't overcome' " and previous diagnosis of mental illness sufficient to require reversal of trial court's denial for mental evaluation under
 
 Ake
 
 );
 
 Lindsey v. State
 
 ,
 
 254 Ga. 444
 
 ,
 
 330 S.E.2d 563
 
 (1985) (evidence that defendant had a history of mental problems and that defendant had been diagnosed as a paranoid schizophrenic and had been prescribed antipsychotic medications sufficient to require reversal of trial court's denial of mental evaluation under
 
 Ake
 
 ).
 

 ¶51. As explained in
 
 Ake
 
 , a defendant need make only a "
 
 preliminary showing
 
 that his sanity at the time of the offense" is at issue in order to trigger the constitutional protection of "access to a psychiatrist's
 assistance."
 
 Ake
 
 ,
 
 470 U.S. at 74
 
 ,
 
 105 S.Ct. 1087
 
 (emphasis added). It is beyond any reasonable argument that Parker's proffered evidence amounted to a sufficient
 
 preliminary showing
 
 . And once such a preliminary showing has been made, an indigent defendant must be given the "raw materials integral to the building of an effective defense."
 
 Ake
 
 ,
 
 470 U.S. at 77
 
 ,
 
 105 S.Ct. 1087
 
 . This analysis comports with the
 
 M'Naghten
 
 test,
 
 Hearn
 
 ,
 
 3 So.3d at 738
 
 , and other principles of constitutional fairness.
 
 Lowe v. State
 
 ,
 
 127 So.3d 178
 
 , 181 (Miss. 2013) ("We will not hesitate to reverse a trial court's denial of expert assistance to an indigent defendant when the lack of expert assistance denied the defendant due process such that the trial was rendered fundamentally unfair." (citing
 
 Fisher v. City of Eupora
 
 ,
 
 587 So.2d 878
 
 , 883 (Miss. 1991) )).
 
 See also
 

 Bishop v. State
 
 ,
 
 96 Miss. 846
 
 ,
 
 52 So. 21
 
 , 22-23 (1910).
 

 ¶52. To be clear, this preliminary showing is far from dispositive of the question of whether Parker has presented a viable insanity defense, or that he will ever do so. That "ultimate issue is to be determined by the jury."
 
 Billiot v. State
 
 ,
 
 454 So.2d 445
 
 , 463 (Miss. 1984). As the majority observes, Parker's ability or inability to recall his actions does not affect whether he could distinguish right from wrong at the time of the alleged crime. But Parker has made a sufficient preliminary showing on the question of his sanity at the time of the offense to warrant a mental health evaluation under
 
 Ake
 
 . Indeed, part of the reason for conducting a mental evaluation is to help the defendant determine whether an insanity defense is viable.
 
 Liles
 
 ,
 
 945 F.2d at 340
 
 ("One of the functions of [ ] a court-appointed psychiatric expert, therefore, is to assist the defense in determining whether an insanity defense is viable or warranted under the circumstances of a particular case." (citing
 
 Ake
 
 ,
 
 470 U.S. at 82
 
 ,
 
 105 S.Ct. 1087
 
 )).
 

 ¶53. Parker questioned his own sanity and thus provided the trial court ample reason to require a mental health examination by a court-appointed professional in accordance with
 
 Ake
 
 . For these reasons, I dissent and would reverse Parker's conviction and sentence and would remand the case to the Forrest County Circuit Court for a new trial.
 

 KING, P.J., JOINS THIS OPINION.
 

 Parker had been found by the trial court to be indigent. Although he had a court-appointed attorney, Parker drafted and filed the motion
 
 pro se
 
 because his attorneys, according to Parker, did not want to pursue an insanity defense. Both attorneys were present at the motion hearing.
 

 The circuit court made the following statements: "I want you to tell me ... [the reasons] you have a mental condition[ ] that leads you to be incompetent to stand trial or assist your attorneys[.]"; "[S]o are you competent[?] [D]o you feel like you're competent to assist your attorneys in preparing your defense?"; "[I]n determining whether or not the defendant is competent to stand trial and assist in his trial ... the [c]ourt has observed the defendant's demeanor and conduct[.]"; "I have failed to observe or perceive any untoward conduct on the part of the defendant."; "I find no basis to deem Mr. Parker incompetent to assist in his defense or proceed to trial[.]"; "[S]pecifically the [c]ourt finds that Mr. Parker appears to have sufficient present mental - - present sufficient - - present ability to confer with his attorneys[.]"; "Therefore, I find that Mr. Parker is competent to stand trial at this time[.]"
 

 Parker made the following statements: "Judge, this has nothing to do with me standing trial."; "Judge, like I stated, this has nothing to do with this time and period right now. It has to do with" the time of the crime; "But, Judge, we're not talking about what I was capable of doing then or now. We're talking about what happened on that night."
 

 Now-Presiding Judge Wilson authored the plurality opinion. Then-Chief Judge Lee, then-Presiding Judge Griffis, now-Chief Judge Barnes, and Judge Fair concurred. Judge Greenlee concurred in part and dissented in part without separate written opinion. Judge Tindell dissented with separate written opinion, joined by then-Presiding Judge Irving and Judges Carlton, Greenlee, and Westbrooks.
 

 The
 
 M'Naghten
 
 test was announced first by the English House of Lords.
 
 M'Naghten's Case
 
 (1843) 8 Eng. Rep. 718, 10 Clark & F. 200. This Court expressly adopted the
 
 M'Naghten
 
 test in 1955.
 
 Johnson v. State
 
 ,
 
 223 Miss. 56
 
 , 67,
 
 76 So.2d 841
 
 , 844 (1955) ("We apply the test of the leading English case known as
 
 M'Naghten
 
 's case, which is the majority rule." (citing 14 Am. Jur.
 
 Criminal Law
 
 §§ 38 -40 )). The
 
 Johnson
 
 Court adopted the test, noting that earlier Mississippi decisions had recognized and applied the substance of the rule.
 
 See, e.g.
 
 ,
 
 Eatman v. State
 
 ,
 
 169 Miss. 295
 
 ,
 
 153 So. 381
 
 , 381 (1934).
 

 The United States Constitution, to which this Court unquestionably is bound, establishes a minimum standard for state courts. Though unnecessary here, "We are empowered by our state constitution to exceed federal minimum standards of constitutionality and more strictly enforce [constitutional rights]."
 
 Downey v. State
 
 ,
 
 144 So.3d 146
 
 , 151 (Miss. 2014).
 

 Of significance, perhaps, is that Parker did not testify, and he did not tell the LPC/NCC examiner that he was, at the time, taking medication for psychosis.
 

 Now-Chief Judge Barnes of the Court of Appeals has expounded on this problem: "All too often, we see records where a witness is informed he 'can't say what anyone else said' without any attempt to determine whether the statements are being used to prove the truth of the matter."
 
 Harrell v. State
 
 ,
 
 179 So.3d 16
 
 , 22-23 (Miss. Ct. App. 2014) (Barnes, J., dissenting).
 

 The State did not rebut or challenge any of Parker's evidence. The trial judge asked, "All right, does the State have anything?" The prosecutor responded, "We have no proof to offer, Judge. Just argument."