206 So.2d 195 (1968)
Lillie Mae THOMPSON
v.
STATE of Mississippi.
No. 44561.
Supreme Court of Mississippi.
January 15, 1968.
L. Lackey Rowe, Jr., Jackson, Howard Dyer, Greenville, for appellant.
Joe T. Patterson, Atty. Gen., by Guy N. Rogers, Asst. Atty. Gen., Jackson, for appellee.
SMITH, Justice.
Lillie Mae Thompson was indicted in the Circuit Court of Attala County for the *196 crime of burglary. She was tried, convicted and sentenced to serve a term of seven years in the penitentiary.
The case has been before this Court on two previous occasions. Appellant's conviction of the same offense was affirmed by this Court in Thompson v. State, 186 So.2d 747 (Miss. 1966). Later, in Thompson v. State, 188 So.2d 239 (Miss. 1966), leave was granted appellant to file a petition for a writ of error coram nobis. Upon the hearing held pursuant to that petition, the former conviction was set aside, the appellant was retried and again convicted. It is from that conviction that she now appeals.
Several errors are assigned as requiring reversal. Some of these are the same or closely similar to those assigned on her appeal from her former conviction. It is the position of the State of Mississippi on this appeal that the decision of the Court in Thompson v. State, 186 So.2d 747 (Miss. 1966), affirming the first conviction, established the law of the case, controls on this appeal, and requires an affirmance of the second conviction. In support of this contention, appellee cites Continental Turpentine and Rosin Company v. Gulf Naval Stores Company, 244 Miss. 465, 142 So.2d 200 (1962), and Mississippi College v. May, 241 Miss. 359, 128 So.2d 557 (1961).
However, the doctrine announced in those decisions requires a similarity of facts. Such a similarity is not present here. In the Court's opinion, affirming the appellant's former conviction, this Court said:
On cross-examination the sheriff said that his deputy made the arrest, and he was sure he had a warrant for her arrest. 186 So.2d at 747. (Emphasis added.)
The opinion concluded:
No product of any search of appellant's premises was introduced in evidence, so there is no issue of an illegal search and seizure. Appellant's counsel did not develop this point at the trial, made no motion for production of an affidavit and search warrant, and thus no issue exists as to whether an illegal search and seizure was used to extract the confession. 186 So.2d at 747-748. (Emphasis added.)
The record made upon the second trial is materially different in both of these aspects from that in the first. From the record made upon retrial of the case, it appears that the sheriff was mistaken in stating that "he was sure" there was a warrant for appellant's arrest.
Moreover, the issue as to the legality of the search of appellant's home was fully developed upon the second trial, the purported search warrant under which the search was conducted was introduced, and it was established that this warrant had been issued with no supporting affidavit or other basis upon which a judicial determination could be made upon the question of probable cause.
The following relevant facts are reflected by the present record:
In April, 1965, one Shields stored certain bed clothes, china, and other household effects in a vacant house belonging to his brother. There they were locked up and remained, so far as is known, until sometime between June 15 and July 1, 1965. It was not until then that Shields discovered the house had been broken into and his property stolen. Appellant's home was located somewhere in the vicinity of the house from which the goods had been taken. Throughout the entire period covered by the evidence, she continued to live there with her husband, Roosevelt Thompson, and her son, McKinley Thompson. On the night of September 2, 1965, some two months after the discovery of the burglary, acting upon information, the source and character of which does not appear in the record, the sheriff of Attala County filled in a blank form of search warrant for the home of appellant's husband, Roosevelt Thompson, which was, of course, also appellant's home *197 and that of their son, McKinley Thompson. In doing so, the sheriff wholly failed to insert any description of the stolen property or of the place to be searched, and merely wrote in the name "Roosevelt Thompson" in each of the blanks appearing on the form. The paper thus prepared was handed to a deputy sheriff who took it to a justice of the peace who signed it. No affidavit of any kind was made or executed and no hearing was held precedent to the issuance of this paper. Armed with this so-called search warrant, the deputy went to the home of Roosevelt Thompson and his wife, Lillie Mae Thompson, the appellant, and proceeded to search it. At the time, Lillie Mae Thompson was present. There, he found articles said to have been those stolen in the burglary.
Whereupon, the deputy sheriff arrested Roosevelt Thompson and McKinley Thompson and placed them in jail at 9 o'clock on the night of September 2, 1965. At the jail, after talking to Roosevelt Thompson for a short time, the sheriff sent his deputy back to the Thompson home with verbal orders to arrest Lillie Mae Thompson. No affidavit was made charging her with any crime and no warrant issued for her arrest. Nevertheless she was arrested, placed in jail at about 10 o'clock that same night, September 2, 1965, and informed that she was being jailed upon the charge of having burglarized the house and stolen Shields' goods.
The next day, still in jail, she was again questioned by the district attorney, the sheriff and the jailer. Upon her trial, the sheriff was permitted to testify, over her strenuous objection, that she confessed to him in the jail on this occasion that she was guilty of the burglary.
When the objection was interposed to this confession, the court conducted a hearing as to its competency out of the presence of the jury. The sheriff testified that appellant was told by the district attorney that she did not have to make a statement, that any statement she made would be used against her, and that she had a right to counsel. The sheriff said that appellant then stated that she did not desire counsel.
It is virtually conceded that the search of the Thompson home was unlawful. The entire absence of the indispensable basic affidavit or any other basis for the judicial determination that probable cause existed for its issuance, and the patent inadequacy of the warrant itself to meet established constitutional requirements, are matters so obviously fatal as to make further discussion of the subject a waste of time. O'Bean v. State, 184 So.2d 635 (Miss. 1966).
The direct and immediate result of the illegal search of the home and the discovery of the stolen goods was that appellant's husband and son were illegally arrested and placed in jail. Within minutes after this was done, the deputy sheriff was sent back to the home and appellant was arrested, without a warrant, placed in jail and verbally charged with the burglary. Notwithstanding the closely related events in point of time (all within one hour) and the interrelated arrests of all members of the family, the arrest of appellant herself is sought to be justified as having been predicated upon probable cause. This probable cause is said to consist of a statement, obtained from appellant's husband while in jail following his own illegal arrest, to the effect that he had not committed the crime, but that the officers should talk to his wife as she had been "known to steal." It is argued that this constituted probable cause for appellant's arrest. In testifying to this statement, said to have been made by the husband, the sheriff admitted that her husband had not accused appellant of having committed the crime, and had not said that she had broken into the house or stolen the goods belonging to Shields.
In view of the conclusion we have reached, it is not necessary to decide whether it was permissible for the sheriff to testify to an incriminatory statement, said to have been made against appellant by her *198 husband following his own illegal arrest and confinement to which the husband himself would not have been permitted to testify. Miss.Code 1942 Annot. § 1689 (1956). See Smith v. State, 193 Miss. 474, 10 So.2d 352 (1942).
But the right of the wife to complain of the illegal search of her home is no less than that of the husband. Brewer v. State, 142 Miss. 100, 107 So. 376 (1926).
The events of the night of September 2, 1965, including appellant's confession under the circumstance in evidence, are so closely connected in point of time and so inextricably interrelated, as to render her confession a direct consequence of the unlawful search and arrests, and one of the fruits of the unlawful invasion of the family home and the unwarranted arrest of all members of the family unit.
The fact that appellant's arrest was subsequent (within less than an hour) to the arrests of her husband and son, in no wise affects the question. It may not be neatly excised from the contaminated whole or her confession upheld upon the theory that the husband's statement, while himself illegally arrested and confined, as a result of the illegal search, comprised probable cause so that her confession became the result of "an intervening independent act of a free will."
The case here differs in several respects from Wong Sun v. United States, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963). Wong Sun involved the competency of confessions obtained in the course of a connected and interrelated series of unlawful searches by officers, and the attempted use of statements obtained from occupants of the first place unlawfully searched as probable cause for subsequent arrests of occupants of other places later also unlawfully searched. Certain statements of the Court in that case have cogent application here. In Wong Sun, the Court said:
In order to make effective the fundamental constitutional guarantees of sanctity of the home and inviolability of the person, Boyd v. United States, 116 U.S. 616, 6 S.Ct. 524, 29 L.Ed. 746, this Court held nearly half a century ago that evidence seized during an unlawful search could not constitute proof against the victim of the search. Weeks v. United States, 232 U.S. 383, 34 S.Ct. 341, 58 L.Ed. 652. The exclusionary prohibition extends as well to the indirect as the direct products of such invasions. Silverthorne Lumber Co. v. United States, 251 U.S. 385, 40 S.Ct. 182, 64 L.Ed. 319, 371 U.S. at 484-485, 83 S.Ct. at 416.
* * * * * *
The Government argues that Toy's statements to the officers in his bedroom, although closely consequent upon the invasion which we hold unlawful, were nevertheless admissible because they resulted from `an intervening independent act of a free will.' This contention, however, takes insufficient account of the circumstances. Six or seven officers had broken the door and followed on Toy's heels into the bedroom where his wife and child were sleeping. He had been almost immediately handcuffed and arrested. Under such circumstances it is unreasonable to infer that Toy's response was sufficiently an act of free will to purge the primary taint of the unlawful invasion. 371 U.S. at 486, 83 S.Ct. at 416.
When appellant confessed, she had been illegally arrested and was in jail. She had no means of knowing that the search of her home was void or that her arrest and confinement were illegal. She knew no more than that a law enforcement officer of the State of Mississippi, armed with an official document issued by a justice of the peace and purporting to authorize the search of her home, had entered and found certain articles said to be those stolen, and had, within the hour, arrested her husband, her son and herself.
The circumstances in which appellant found herself as the result of this series of acts on the part of the officers, all of which *199 were illegal and violative of fundamental rights, subjected her to pressures which rendered involuntary the incriminatory statement attributed to her.
We have concluded that the search of appellant's home and her subsequent arrest were unlawful, that her confession, under the special circumstances in this case, was unlawfully obtained and was not admissible in evidence against her.
As said in Wong Sun, supra:
* * * (N)or is this a case in which the connection between the lawless conduct of the police and the discovery of the challenged evidence has `become so attenuated as to dissipate the taint.' 371 U.S. at 487, 83 S.Ct. at 417.
The record does not disclose any reason why the brief time that would have been required to obtain a valid warrant for the search of the Thompson home was not available. About two months elapsed between the discovery of the crime and the arrests. It does not appear that there was imminent danger of flight or concealment of the goods. A great deal of publicity has been given to decisions of the United States Supreme Court, which are binding upon this Court, stating what is required in order that a valid search may be made. Failure to comply is fatal, renders the search void and its fruits inadmissible as evidence in a subsequent prosecution against the lawful occupant of the place searched.
The motion to exclude the confession should have been sustained. As there was no competent evidence to connect appellant with the commission of the crime, the case must be reversed and the appellant discharged.
Reversed and appellant discharged.
GILLESPIE, P.J., and RODGERS, BRADY and PATTERSON, JJ., concur.