413 So.2d 1036 (1982)
David Allen PATTERSON
v.
STATE of Mississippi.
No. 53465.
Supreme Court of Mississippi.
May 19, 1982.
*1037 Jeffrey Jones, Memphis, Tenn., James H. Mathis, Corinth, for appellant.
Bill Allain, Atty. Gen. by Charles W. Maris, Jr., Sp. Asst. Atty. Gen., Jackson, for appellee.
Before PATTERSON, C.J., and BROOM and DARDEN, JJ.
DARDEN, Justice, for the Court:
The defendant was indicted for three burglaries and the cases were tried together. The Circuit Court of DeSoto County directed a verdict of not guilty in one of the cases. From a conviction on the remaining two charges and consecutive sentences of five years the defendant appealed. We affirm.
On a report that a person had backed a car into the carport of a house in northwestern DeSoto County and peeped in a window of the house, Deputy Sheriff Ward obtained a description of the person, the car, and its Tennessee license plate numbers. The car and, in general, the person matched the description of a car and person seen in the neighborhood where some forty burglaries of residences had recently been committed. Other officers were alerted by Ward and another sheriff's patrol car spotted the car and signaled with blinking light and siren for it to stop. It proved to be the defendant, who stopped, but as the officers got out of the car to approach his vehicle from the rear, he drove off at an excessively rapid speed.
The officers gave chase for two or more miles, the defendant exceeding the speed limit and running one or more stop signs and finally running his car into a ditch. As defendant crawled out of his wrecked car, Regular Deputy Quarrels and Reserve Deputy Robb placed him under arrest for traffic violations, searched him for weapons, handcuffed him and Quarrels advised him of his Miranda rights. Defendant voluntarily stated that he was on narcotics and had broken into some houses that morning.
There was a pistol, holster and cartridges on the front seat and another pistol on the floorboard, all in plain view through the open front door of the car. When Deputy Ward and Reserve Deputy Looney arrived, defendant was in the back seat of Quarrels' patrol car, handcuffed. Ward testified that when he arrived that he gave Patterson his Miranda rights and that Patterson voluntarily told him he was on narcotics and had burglarized three houses that morning. He offered to show Deputy Ward the houses. Later Regular Deputy Madden, who had heard the radio report of the chase and wreck, arrived at the scene.
A wrecker was called and Ward ordered a search of the car trunk and an inventory of the contents, which Madden made out. There was a conflict in the testimony of the several officers at the hearing of a motion to suppress the physical evidence resulting from that search as to whether Ward talked to the defendant prior to the search of his car trunk.
Quarrels and Robb transported defendant from the scene of the wreck to jail and on the way there, he again said he was on narcotics and had been told there were some easy touches to be made down in DeSoto County breaking into houses. He said he wanted to make a deal. No promises were made to him and no threats or coercive conduct used to induce him to make the statement.
*1038 When Ward came into the jail defendant said he wanted to cooperate, that he was on narcotics and wanted to clear things up and would go and show the officers the three houses he had broken into that morning. They drove to two of the houses which had doors forced open or broken, and which defendant identified as having been burglarized by him. He could not remember the location of the third house and it was not until a later report of burglary by the owner that it was identified.
A motion to suppress evidence in regard to the contents of the car trunk opened at the wreck was sustained. The court held there was ample opportunity for the officers to obtain a search warrant for the car trunk and absent that the physical evidence resulting from the search could not be elicited.
For purposes of our discussion of defendant's rights against self-incrimination, we assume here that the search was illegal and in violation of rights secured by Section 23 of our Constitution and the Fourth Amendment to the United States Constitution.
In indulging such an assumption, we refer to the search as illegal, but we do not here pass upon the reasonableness of the search of the car trunk, or the validity of the trial court's ruling excluding the evidence resulting from such search. We have held that a search made in connection with an inventory where a car is impounded by police is a reasonable one, within the meaning of Section 23 and the Fourth Amendment. See, for example, Gordon v. State, 222 So.2d 141 (Miss. 1969); Jackson v. State, 243 So.2d 396 (Miss. 1970) and Florence v. State, 397 So.2d 1105 (Miss. 1981). Also of interest in connection with warrantless searches of motor vehicles are Horton v. State, 408 So.2d 1197 (Miss. 1982); Robbins v. California, 453 U.S. 420, 101 S.Ct. 2841, 69 L.Ed.2d 744 (1981), and New York v. Belton, 453 U.S. 454, 101 S.Ct. 2860, 69 L.Ed.2d 768 (1981).
On the trial there was ample proof of the corpus delicti, but strenuous objection by able counsel was interposed to testimony in regard to the confession of burglary and the identification by defendant of the two houses broken into. The basis of the objection was that the confession was the poisoned fruit of the illegal search of defendant's car trunk. The trial court held that the confession and identification of the houses were voluntary untainted.
The appeal presents the question of whether the trial court was in error in holding that the incriminating statements of defendant were not triggered or induced by the illegal search.
In his appeal the defendant undertakes to rely upon the principles announced in Wong Sun v. United States, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963) and its progeny.
There was no question raised and no valid basis for questioning the arrest of defendant. The pistol, cartridges and holster were in plain view of the officers in defendant's car. Any information obtained by means of the eye where no trespass has been committed in aid thereof is not illegally obtained. Goodman v. State, 158 Miss. 269, 130 So. 285 (1930). See, also, a discussion of the plain view doctrine in Coolidge v. New Hampshire, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971). The pistol and holster were later shown to have been taken from one of the two burglarized homes defendant pointed out to Ward. No illegality in respect to this item occurred.
We have held that a confession obtained by confrontation of an accused with articles indicating the commission of a crime obtained as a result of an illegal search renders the contemporaneous confession inadmissible. Likewise, where the confession comes so closely in time subsequent to the confrontation that the lapse has not attenuated the taint of illegality, proof of the confession may not be given. The reasoning is that violation of Fourth Amendment rights and those protected by section 23 of our Constitution destroys the voluntary nature of a confession made after an accused is presented with the results of that violation. Hence, such a confession, whether in words or incriminatory actions, if adduced over objection, amounts, in effect, to *1039 a deprivation of rights against self-incrimination afforded by the Fifth Amendment and section 26 of our Constitution. Thompson v. State, 206 So.2d 195 (Miss. 1968), Vanderlin v. State, 267 So.2d 311 (Miss. 1972). These cases follow Wong Sun, supra.
In the case sub judice, however, both Quarrels and Ward, in evidence given at hearing on the motion to suppress and again at trial, testified to a free and voluntary confession by defendant before the search of the car trunk occurred. It follows that the confession and offer of the defendant to show Ward the three houses he had broken into was unrelated to and completely free of any taint of the illegality of the subsequent search.
In Dunning v. State, 251 Miss. 766, 171 So.2d 315 (1965), cert. den., 386 U.S. 993, 87 S.Ct. 1310, 18 L.Ed.2d 339 (1967), we held that even assuming action by the state in delaying Dunning's committal hearing, constitutes an illegal act, the delay did not render a prior confession inadmissible, the court saying:
Assuming this delay to be unreasonable, the illegal delay would not be retroactive so as to vitiate the legal evidence theretofore obtained. [251 Miss. at 778-779, 171 So.2d at 320].
We hold that the illegal search in this case did not relate back so as to invalidate the confession already made.
This leaves only the question of whether the action of defendant in pointing out two of the three houses burglarized after the illegal search was so much a result of the search as to be tainted and therefore inadmissible.
Appellant cites Brown v. Illinois, 422 U.S. 590, 95 S.Ct. 2254, 45 L.Ed.2d 416 (1975), and correctly quotes from it as follows:
`We need not hold that all evidence is "fruits of the poisonous tree" simply because it would not have come to light but for the actions of the police. Rather, the more apt question in such a case is "whether, granting establishment of the primary illegality, the evidence to which instant objection is made has been come at by exploitation of that illegality or instead by means sufficiently distinguishable to be purged of the primary taint." .. .' [Wong Sun v. United States, supra] at 487-488, 9 L.Ed.2d 441, 83 S.Ct. 266 [417]. [422 U.S. at 599, 95 S.Ct. at 2259, 45 L.Ed.2d at 424].
See also United States v. Brookins, 614 F.2d 1037 (5th Cir.1980).
In Brown, the Court further said:
... The question whether a confession is the product of a free will under Wong Sun must be answered on the facts of each case. No single fact is dispositive. The workings of the human mind are too complex, and the possibilities of misconduct too diverse, to permit protection of the Fourth Amendment to turn on such a talismanic test. (Emphasis added) [422 U.S. at 603, 95 S.Ct. at 2261, 45 L.Ed.2d at 427].
Rawlings v. Kentucky, 448 U.S. 98, 100 S.Ct. 2556, 65 L.Ed.2d 633 (1980), enlarges on Brown and sets out certain criteria to be considered in the application of the so-called Wong Sun rule in determining whether incriminating statements were obtained by exploitation of an illegal act:
1. Miranda warning (important but not dispositive).
2. Temporal proximity of illegal act and confession.
3. Whether any circumstances intervened between the illegal act and the challenged statement.
4. Consideration of the "purpose and flagrancy of the official misconduct."
5. Voluntariness of the confessions.
Applying the Rawlings test to the case at bar we find:
1. Miranda warnings were given by both Quarrels and Ward prior to any incriminating statements or action by defendant.
2. The initial confessions came before the search. About an hour elapsed between the search and defendant's statements to Ward at the sheriff's office and his trip to show the houses. This, if it stood alone might possibly be an insufficient time for any evil effects to be dissipated.
*1040 In Thompson, supra, defendant was unlawfully arrested and jailed within less than an hour after an illegal search. While still in custody in jail she confessed the next day, and the confession was held inadmissible. Here, of course, there was no question of illegal arrest where there was probable cause to suspect the commission of a felony and the commission of misdemeanors consisting of traffic law violations in the presence of the arresting officers.
In Vanderlin, supra, there is no statement in the reported facts as to the length of time elapsing between the illegal search and the admission of guilt.
In his brief, appellant states that Wong Sun and United States v. Scios, 590 F.2d 956 (D.C. Cir.1978), suggest that a per se rule may be the most workable solution, that is, that an incriminating statement made at the scene of an illegal search will always be held to be the fruit of coercion.
To the contrary, the per se rule referred to in Scios was a proposal that all live witness testimony would be admissible, regardless of whether obtained as a result of illegality. Commenting on United States v. Ceccoline, 435 U.S. 268, 98 S.Ct. 1054, 55 L.Ed.2d 268 (1978), the Court in Scios said:
Justice Rehnquist, for the Court, found that the taint of the illegal search by the officer had been sufficiently attenuated to permit introduction of the testimony. The Court rejected the notion that the exclusionary rule was subject to a per se exception that rendered all live witness testimony admissible, regardless of whether obtained as a consequence of illegality. Instead, the particular features of a case must be examined to balance the benefits of the exclusionary rule, with its deterrent purpose, against the costs. [590 F.2d at 962].
Here the initial confessions were made before the search of the car trunk, and the subsequent statements were away from the scene of the search. Additionally, such an inflexible rule would prevent us from considering the several elements set out in Rawlings.
The defendant had ample opportunity to reflect and to remain silent or refuse to show the houses burglarized before his second discussion with Deputy Ward. He chose, voluntarily, to try to make a deal or induce leniency by cooperation with the officers, and we hold that the time element, in these circumstances, is not of significant help in determining the coercive effect of the illegal search.
3. Here there was the intervention of the trip from the scene of the search to the jail, the booking procedures, defendant's concern about his jacket which he had temporarily misplaced, and his reiteration of his statement to Ward, who arrived later than defendant at the jail, that he wanted to clear things up by pointing out the houses.
4. While the search of the car may have been in violation of defendant's Fourth Amendment rights, its purpose could not be said to be a flagrantly willful act designed to incriminate defendant. The officers were already aware of the pistol which they later learned had been recently stolen. Testimony by one officer showed that when officers called a wrecker to tow away a disabled vehicle they made a report showing the physical condition of the vehicle and an inventory of its contents so that responsibility could be fixed for any further damage or the loss of any personal property. Such a report and inventory was made here as a part of the officer's standard procedure, including the inventory of the contents of the car trunk.
5. There would seem to be no question that the confessions, aside from the illegal search, were voluntary.
We conclude, therefore, in the language of Brown, supra, that the evidence of the confessions and the actions of defendant in showing the two burglarized houses involved in these cases came about, not by exploitation of any illegality, but by means sufficiently distinguishable to be purged of any taint. We, therefore, affirm the convictions and sentences.
AFFIRMED.
*1041 PATTERSON, C.J., SUGG and WALKER, P. JJ., and BROOM, ROY NOBLE LEE, BOWLING, HAWKINS and DAN M. LEE, JJ., concur.