**5/20/97**

IN THE COURT OF APPEALS

OF THE

STATE OF MISSISSIPPI

NO. 94-KA-00354 COA

MICHAEL PATRICK HANKS

APPELLANT

v.

STATE OF MISSISSIPPI

APPELLEE

THIS OPINION IS NOT DESIGNATED FOR PUBLICATION AND

MAY NOT BE CITED, PURSUANT TO M.R.A.P. 35-B

TRIAL JUDGE: HON. WILLIAM F. COLEMAN

COURT FROM WHICH APPEALED: CIRCUIT COURT OF HINDS COUNTY

ATTORNEY FOR APPELLANT:

THOMAS FORTNER

ATTORNEY FOR APPELLEE:

OFFICE OF THE ATTORNEY GENERAL

BY: DEIRDRE MCCRORYDISTRICT ATTORNEY: CYNTHIA HEWES SPEETJENS

NATURE OF THE CASE: CRIMINAL - BURGLARY AND SEXUAL BATTERY

TRIAL COURT DISPOSITION: CONVICTED OF BURGLARY AND SEXUAL BATTERY. SENTENCED TO 25 AND 30 YEARS, RESPECTIVELY, IN CUSTODY OF MDOC.

MOTION FOR REHEARING FILED:6/18/97

MANDATE ISSUED: 10/30/97

EN BANC

BRIDGES, C. J., FOR THE COURT:

Michael P. Hanks was convicted in the Circuit Court of Hinds County of burglary of an occupied dwelling at night while armed with a deadly weapon and sexual battery. Hanks was placed in the custody of the Mississippi Department of Corrections to serve a sentence of twenty-five (25) years for burglary and thirty (30) years for sexual battery, both to be served consecutively. Hanks appeals his conviction, asserting the following points of error:

I. THE NUMEROUS INSTANCES OF PROSECUTORIAL MISCONDUCT DURING THE APPELLANT'S TRIAL HAD A HARMFUL EFFECT ON THE JURY AND DEPRIVED THE APPELLANT OF A FAIR AND IMPARTIAL TRIAL AND DUE PROCESS OF LAW IN VIOLATION OF HIS RIGHTS AS GUARANTEED BY FIFTH, SIXTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND ARTICLE 3, SECTION 26 OF THE MISSISSIPPI CONSTITUTION.

II. THE SCREWDRIVERS SEIZED BY POLICE FROM AN INVENTORY SEARCH OF THE APPELLANT'S VEHICLE SHOULD HAVE BEEN EXCLUDED AT TRIAL BECAUSE THE SEARCH OF THE VEHICLE WAS MADE PURSUANT TO THE ILLEGAL ARREST OF THE APPELLANT IN VIOLATION OF HIS RIGHTS AS GUARANTEED BY THE FOURTH AMENDMENT OF THE UNITED STATES CONSTITUTION AND ARTICLE 3, SECTION 23 OF THE MISSISSIPPI CONSTITUTION.

III. ALL TESTIMONY CONCERNING THE COMPLAINING Witness' PRETRIAL IDENTIFICATION OF THE APPELLANT AS HER ASSAILANT SHOULD HAVE BEEN EXCLUDED BECAUSE THAT IDENTIFICATION WAS A DIRECT RESULT OF HIS ILLEGAL ARREST IN VIOLATION OF HIS RIGHTS AS GUARANTEED BY THE FOURTH AMENDMENT OF THE UNITED STATES CONSTITUTION AND ARTICLE 3, SECTION 23 OF THE MISSISSIPPI CONSTITUTION.

IV. THE PRETRIAL IDENTIFICATION PROCEDURE DURING WHICH THE COMPLAINING WITNESS IDENTIFIED THE APPELLANT AS HER ASSAILANT WAS UNNECESSARILY SUGGESTIVE AND GIVES RISE TO A SUBSTANTIAL LIKELIHOOD OF MISIDENTIFICATION. IN ADDITION THE COMPLAINING WITNESSES SUBSEQUENT IDENTIFICATION OF THE APPELLANT AT TRIAL WAS A DIRECT RESULT OF THE OUT OF COURT IDENTIFICATION PROCEDURE AND IS NOT BASED ON INDEPENDENT RECOLLECTION OF HER ASSAILANT DURING THE CRIME. THE APPELLANT'S CONSTITUTIONAL RIGHT TO DUE PROCESS OF LAW HAS BEEN VIOLATED.

V. THE APPELLANT'S CONVICTIONS AND SENTENCES ON BOTH OF THE COUNTS OF THE INDICTMENT VIOLATE THE DOUBLE JEOPARDY PROVISIONS OF THE STATE AND FEDERAL CONSTITUTIONS BECAUSE NO FURTHER EVIDENCE WAS NECESSARY TO PROVE THE SEXUAL BATTERY CHARGE ONCE THE PROSECUTION PROVED THE CHARGE OF BURGLARY OF AN OCCUPIED DWELLING AT NIGHT WHILE ARMED WITH A DEADLY WEAPON WITH INTENT TO COMMIT SEXUAL BATTERY. ALTERNATIVELY, IT WAS ERROR TO SENTENCE THE APPELLANT FOR BOTH BURGLARY OF AN OCCUPIED DWELLING AT NIGHT WHILE ARMED WITH A DEADLY WEAPON WITH INTENT TO COMMIT SEXUAL BATTERY AND FOR SEXUAL BATTERY.

UPON HIS CONVICTION ON BOTH CHARGES, THE SEXUAL BATTERY MERGES INTO THE BURGLARY FOR SENTENCING PURPOSES, AND THE APPELLANT MAY ONLY BE SENTENCED ON THE BURGLARY CONVICTION.

Holding Hanks's assignments of error to be without merit, we affirm the judgment of the circuit court.

## FACTS

Around midnight on November 25, 1991, B.L.B. (hereinafter victim), was asleep in her apartment when she awoke to the sound of footsteps in her bedroom. Upon awakening, the victim saw an unknown intruder standing over her bed. The intruder proceeded to cover the victim's mouth and ask her various questions as to who else was in the house and whether she had a boyfriend. The victim indicated that she had a three-year-old son, who was asleep in his bedroom. The intruder began to kiss the victim and told her to put a pillowcase over her head or else he would harm her son. The intruder then placed a sharp metallic instrument with a wooden handle against the victim's neck. After removing the victim's underwear, the intruder moved her to the living room where he took off her shirt, continued to kiss and fondle her, and inserted his fingers into her vagina. At trial, the victim testified that these events transpired without her consent.

At some point during the assault, the victim's son awoke and began to cry. The intruder allowed the victim to enter the boy's bedroom to calm him down. Afterwards, the intruder resumed kissing and fondling the victim. When the child again began to cry, the intruder became distraught and a struggle ensued, during which he grabbed her by her hair and she scratched him. The victim, however, managed to escape and run outside, at which point she began to scream and call to her neighbors for help. The intruder fled the victim's apartment and ran toward the street where he got into his truck and sped away. The victim immediately called the police and provided the "911" emergency operator with a description of the intruder and his vehicle.

Officers of the Jackson Police Department were on patrol near the victim's apartment and immediately responded to the dispatch. While en route to the victim's address, one of the officers observed a white male driving a truck matching the description of the intruder's truck provided by the victim. The officer notified the police dispatcher of his observation, requested backup, and pulled the truck over. Upon approaching the truck, the officer noticed that the driver, Michael Patrick Hanks, matched the description of the intruder. When the officer asked Hanks to produce his driver's licence, Hanks stated that he had no identification on his person. The officer detained Hanks and put him in the back seat of the patrol car. The officer then drove Hanks to the victim's apartment, so that she could identify him. After being identified by the victim as the intruder, Hanks was placed under arrest and taken to police headquarters.

## ANALYSIS

I. THE NUMEROUS INSTANCES OF PROSECUTORIAL MISCONDUCT DURING THE APPELLANT'S TRIAL HAD A HARMFUL EFFECT ON THE JURY AND DEPRIVED THE

APPELLANT OF A FAIR AND IMPARTIAL TRIAL AND DUE PROCESS OF LAW IN VIOLATION OF HIS RIGHTS AS GUARANTEED BY FIFTH, SIXTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND ARTICLE 3, SECTION 26 OF THE MISSISSIPPI CONSTITUTION.

Hanks assigns as error "numerous" instances of alleged prosecutorial misconduct, concluding that in the aggregate they constitute prejudicial error and require the reversal of his conviction. The specific instances of alleged error that Hanks points us to are as follows:

A. Prosecution's alleged comment to jury regarding defendant's right to remain silent and not testify.

Hanks's assignment of error revolves around the following statement, made by the prosecutor to prospective jurors during voir dire:

Now, the State takes its cases as they find them. And I'm sure you will all agree with me that most people don't like to commit crimes in front of a lot of witnesses. Is there anyone here that would require that someone else be present to have observed this incident and to corroborate this witness's testimony as an eye witness? Because I can tell you right now, **it's going to be her word against his**. Is there anyone here who could not find the defendant guilty in a sexual assault case if somebody didn't see it happen?

After having the prospective jurors removed from the court room, Hanks objected to these remarks on the basis that they were "misleading" to the jury and "an attempt by the prosecution to improperly extract promises from the jury to return a verdict of guilt." The trial court overruled these objections and then ordered a recess. After the recess and prior to the return of the prospective jurors, Hanks again objected to the prosecutor's pre-recess statements, this time on the new ground that the statements were an improper comment on his right to or not to testify. The trial court overruled Hanks's objection, finding that it was belatedly made. It is this overruled objection that Hanks raises on appeal.

It is fundamental that in order for an objection to be considered by the trial court it must have been made contemporaneously to the objected-to material. *See Baker v. State*, 327 So. 2d 288, 292-93 (Miss. 1976) (stating that reason for making objection contemporaneously with event complained of is so that court can more accurately know what transpired and not have to rely on its memory, which may be clouded by subsequent testimony). In this case, there was no subsequent testimony intervening between the testimony complained of and the overruled objection raised on this appeal. However, we hold that the trial judge was within his discretion in overruling the objection on the ground that it was "belatedly" made. Even were we to ignore the procedural bar of waiver and choose to review the substance of Hanks's belated objection, it is clear from the record that the prosecutor's statement that the evidence would be "her word against his" was not a comment on Hanks's right to or not to testify. This point of appeal is without merit.

B. Prosecution's questioning at trial improperly commented on Hanks's post-arrest silence.

At trial, the prosecutor asked the officer who initially stopped Hanks's vehicle if "[a]t any time did he tell you he had been at Danny Pettit's house, you can just go check, I've been over there watching football?" Hanks objected to this question as being leading, but was overruled. On appeal, Hanks

attempts to raise the new issue of whether this remark improperly commented on his right to remain silent after being arrested. Because this issue was not raised at trial and the trial court, therefore, had no opportunity to address this question, it is procedurally barred from review by this Court. *See Thornhill v. State*, 561 So. 2d 1025, 1029 (Miss. 1989) (stating that it is "elementary that different grounds than the objections presented to the trial court cannot be presented for the first time on appeal"). Again, even were this Court to address the substantive merits of Hanks's newly-raised objection, it would be held without merit as Hanks was not under arrest during the time frame in question. At the point in time the prosecutor was referring to, the officer had merely stopped Hanks for questioning. Accordingly, this point of error is without merit.

C. Court's handling of objections made during prosecution's cross-examination of Danny Pettit.

Hanks next contends that on several occasions the prosecution repeated questions to which the trial court had previously sustained his objections. Our review of the trial transcript confirms that this is indeed true. Of the questions with which Hanks takes issue, several involve nothing more than objections by him that the trial court denied. However, on three occasions the trial court did sustain Hanks's objection to the prosecution's questions, on the basis of relevancy, only to have the prosecution almost immediately ask the same or a similar-type question. In these instances Hanks immediately renewed his objection, which was sustained, and the prosecution would then alter its behavior to conform to the trial court's ruling. Additionally, on one of these occasions, the trial court went on to, *sua sponte*, instruct the jury to disregard the irrelevant testimony. Despite the prosecution's continued use of irrelevant questions, on these limited occasions, this Court is convinced that such behavior resulted more from a lack of attention by the prosecutor than an intent to disregard the trial court's authority. Considering that the sustained objections were granted based on the irrelevancy of some of the prosecution's questions, rather than because the questions were of a more damaging nature such as hearsay or being unduly prejudicial, we hold that Hanks was not deprived of a fair trial by the prosecution's conduct.

In reaching this conclusion this Court finds it significant that, at the time the offending questions were asked, had Hanks truly believed the prosecution's questions were prejudicial to his defense he could have requested the trial court to admonish the jury to disregard the prosecution's remarks, but he did not. *See Graves v. State*, 492 So. 2d 562, 564 (Miss. 1986) (holding that had counsel wished to have jury instructed to disregard statement, counsel should have requested court to make admonishment). A review of the trial transcript indicates that Hanks never requested such admonishment and the only warning given was on one occasion, at the trial court's own initiative. Regardless of the lack of an admonition by the trial court, it is presumed that the sustaining of an objection causes the jury to disregard the objected-to material. *Lanier v. State*, 533 So. 2d 473, 482 (Miss. 1988). In reviewing the conduct of prosecutors, the Mississippi Supreme Court has held that "[w]here a prosecutor engages in conduct such that the defendant's right to a fair trial is substantially impaired, and where the trial judge improperly fails to grant a mistrial, this Court will reverse on appeal." *McFee v. State*, 511 So. 2d 130, 135 (Miss. 1987). Because the prosecution's actions did not substantially impair Hanks's right to a fair trial we hold this assignment of error to be without merit.

D. Prosecution's improper questions asked during cross-examination of Michael Hanks.

With this point of error, Hanks is essentially alleging the same issues as he raised in sub-part "C,"

*supra*. Hanks points to two additional instances where the prosecution asked the same or a similar question to one that had just been objected to and the objection sustained by the trial court. Again, Hanks immediately objected a second time and was sustained. With both these instances, after the second objection, the prosecution discontinued the questioning. As with the similar occurrences previously discussed, this Court holds that the prosecution's conduct did not deny Hanks his right to a fair trial. *See McFee v. State*, 511 So. 2d 130, 135 (Miss. 1987) (holding that where prosecutor engages in conduct such that defendant's right to fair trial is substantially impaired, and where trial judge improperly fails to grant mistrial, reversal was appropriate). Again, if the complained-of conduct by the prosecution had been so obviously damaging to Hanks, he could have requested an admonishment from the trial court directing the jury to disregard the statements. However, no such request was made. As with sub-part "C," this assignment of error is without merit.

E. Prosecution's remarks made during closing argument.

Hanks alleges that several remarks made by the prosecution in closing argument were unduly prejudicial, and coupled with the other remarks addressed, *supra*, have a cumulative prejudicial effect sufficient to necessitate a reversal of his conviction. At closing argument, the prosecutor stated that it was "child abuse" for the defense to call a fourteen-year-old child to the witness stand when the child's presence was not essential to the case. Hanks immediately objected to this statement and was sustained. The prosecutor then continued her closing argument, making no further reference to the so-called "child abuse." Hanks also alludes to the prosecutor's statements "about information Hanks failed to give the arresting officer," but neglects to direct this Court to any specific pages within the transcript where the allegedly prejudicial material is to be found. This Court has reviewed the prosecutor's closing argument with Hanks's objections in mind. We conclude that any improper statements by the prosecutor in closing argument were not unduly prejudicial to Hanks so as to require a reversal of his conviction, under the familiar standard articulated by the Mississippi Supreme Court. *See Ormond*, 599 So. 2d at 961 (holding that improper argument by prosecutor to jury requires reversal when natural and probable effect of improper argument is to create unjust prejudice against accused so as to result in decision influenced by prejudice so created).

Furthermore, after considering the cumulative effect of all the prosecutor's comments that Hanks complains of, we remain unpersuaded that such remarks resulted in undue prejudice to him. While Hanks has made a reasonable effort of directing this Court to specific instances in the record to support his claim of "numerous instances" of prosecutorial misconduct, he has completely failed to connect the alleged misconduct with any resulting prejudice to his case. Although it is true that instances of error that are not of themselves sufficient to necessitate a reversal may have a cumulative effect of denying the defendant a fair trial, we conclude that such is not the case under the instant facts. We reject this assignment of error.

II. THE SCREWDRIVERS SEIZED BY POLICE FROM AN INVENTORY SEARCH OF THE APPELLANT'S VEHICLE SHOULD HAVE BEEN EXCLUDED AT TRIAL BECAUSE THE SEARCH OF THE VEHICLE WAS MADE PURSUANT TO THE ILLEGAL ARREST OF THE APPELLANT IN VIOLATION OF HIS RIGHTS AS GUARANTEED BY THE FOURTH AMENDMENT OF THE UNITED STATES CONSTITUTION AND ARTICLE 3, SECTION 23 OF THE MISSISSIPPI CONSTITUTION.

Hanks's next assignment of error concerns the admissibility of evidence obtained during an inventory search of his vehicle conducted by the Jackson Police Department subsequent to his arrest. It is well established that the fruits of a valid inventory search conducted subsequent to a lawful arrest are not barred from evidence as the product of an illegal search and seizure. *See Colorado v. Bertine*, 479 U.S. 367, 371 (1987) (holding that "inventory searches are now a well-defined exception to the warrant requirement of the Fourth Amendment"); *Patterson v. State*, 413 So. 2d 1036, 1038 (Miss. 1982) (holding that warrantless search made in connection with inventory where vehicle is impounded by police is reasonable within Constitutions of United States and State of Mississippi). Accordingly, to determine if the evidence obtained during the inventory search of Hanks's truck was admissible, it must first be determined if he had been lawfully arrested prior to the inventory search.

In order to make a felony arrest with or without a warrant, the officer must have probable cause to believe that a felony has been committed and probable cause to believe the suspect to be arrested committed the felony. *Abram v. State*, 606 So. 2d 1015, 1025-26 (Miss. 1992). Whether probable cause existed at the time of the arrest is based on a totality of the circumstances evaluation. *Haddox v. State*, 636 So. 2d 1229, 1235 (Miss. 1994). Probable cause to arrest is more than a mere suspicion, but less than evidence that would justify condemnation. *Wagner v. State*, 624 So. 2d 60, 66 (Miss. 1993).

In reviewing a lower court's conclusion that probable cause existed, appellate courts conduct a de novo review of the lower court's findings in order to determine if there was a substantial basis for concluding that probable cause existed. *McNeal v. State*, 617 So. 2d 999, 1007 (Miss. 1993). Under such review, an appellate court will not overturn a lower court's findings in the presence of substantial evidence to support such findings, where the findings are not clearly erroneous. *Hansen v. State*, 592, So. 2d 114, 138 (Miss. 1991). At the time Hanks was pulled over by the Jackson Police Department officer, the officer was aware of the following facts:

1. A burglary and sexual assault had been committed on River Oaks Boulevard.

2. The perpetrator had departed the crime scene in a new model pickup truck, silver, light blue over dark blue bottom and small to medium in size.

3. The perpetrator was a white male who had "stubble" on his face, like a two-day- old beard, dark hair, and was wearing thick clothing.

A few minutes after receiving the dispatcher's report of the crime, one of the police officers responding to the report observed a truck matching the description provided by the victim. At that time, the truck was located approximately six blocks from the victim's apartment and was traveling away from the crime scene. The officer pulled the truck over and immediately noticed that the driver matched the victim's description of her attacker. We conclude that at this point in time the officer had probable cause to believe that the truck driver, Hanks, was the perpetrator of the felony burglary/sexual battery that had just been reported. *See Johnson v. State*, 347 So. 2d 358, 359-60 (Miss. 1977) (holding probable cause to arrest existed at point in time when officer observed automobile and driver fitting description of perpetrator given by victim). Accordingly, the subsequent inventory search of Hanks's truck was valid and not a violation of the Fourth Amendment of the United States Constitution or Article Three, Section 23 of the Mississippi Constitution.

III. ALL TESTIMONY CONCERNING THE COMPLAINING WITNESS' PRETRIAL IDENTIFICATION OF THE APPELLANT AS HER ASSAILANT SHOULD HAVE BEEN EXCLUDED BECAUSE THAT IDENTIFICATION WAS A DIRECT RESULT OF HIS ILLEGAL ARREST IN VIOLATION OF HIS RIGHTS AS GUARANTEED BY THE FOURTH AMENDMENT OF THE UNITED STATES CONSTITUTION AND ARTICLE 3, SECTION 23 OF THE MISSISSIPPI CONSTITUTION.

With this assignment of error Hanks apparently contends that testimony concerning the victim's pre-trial identification of him as the perpetrator should have been excluded from evidence, because (as he asserts) he was illegally arrested. Because this Court has addressed the validity of Hanks's arrest in analyzing issue number II, and concluded that probable cause existed to support his arrest, we hold that this assignment of error presents no issue for this Court to review. The validity of the victim's pre-trial identification of Hanks will be addressed in the next section of this opinion, where it was properly raised by Hanks's assignment of error number IV.

IV. THE PRETRIAL IDENTIFICATION PROCEDURE DURING WHICH THE COMPLAINING WITNESS IDENTIFIED THE APPELLANT AS HER ASSAILANT WAS UNNECESSARILY SUGGESTIVE AND GIVES RISE TO A SUBSTANTIAL LIKELIHOOD OF MISIDENTIFICATION. IN ADDITION THE COMPLAINING WITNESSES SUBSEQUENT IDENTIFICATION OF THE APPELLANT AT TRIAL WAS A DIRECT RESULT OF THE OUT OF COURT IDENTIFICATION PROCEDURE AND IS NOT BASED ON INDEPENDENT RECOLLECTION OF HER ASSAILANT DURING THE CRIME. THE APPELLANT'S CONSTITUTIONAL RIGHT TO DUE PROCESS OF LAW HAS BEEN VIOLATED.

Hanks argues that the victim should not have been allowed to make an in-court identification of him as her assailant, because her pre-trial identification of him was impermissibly tainted by an unnecessarily suggestive identification procedure. Furthermore, Hanks asserts that the victim's in-court identification of him as the intruder was not based on her independent recollection, thereby violating his right to due process of law as guaranteed by the Fourteenth Amendment to the United States Constitution.

The due process clause of the Fourteenth Amendment proscribes pre-trial identifications which are suggestive, when there is no necessity for conducting them in a suggestive manner. *York v. State*, 413 So. 2d 1372, 1383 (1982). However, even where a pre-trial identification procedure was impermissibly suggestive, only under certain circumstances will due process preclude a subsequent in-court identification by an eyewitness who viewed the suspect at the tainted procedure. Such an in-court identification is prohibited by due process when "(1) from the totality of the circumstances surrounding it (2) the identification was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification." *York*, 413 So. 2d at 1383. The factors used to evaluate the likelihood of irreparable misidentification are known as the *Biggers* factors. *See Wilson v. State*, 574 So. 2d 1324, 1327 (Miss. 1990) (citing *Neil v. Biggers*, 409 U.S. 188, 199 (1972) for criteria used in analysis of whether identification process gave rise to very substantial likelihood of irreparable misidentification)). It should be noted, however, that the *Biggers* factors are utilized only after the pre-trial identification procedure is held to have been impermissibly suggestive. *Wilson*, 547 So. 2d at 1327. Under *Biggers*, the following criteria are analyzed to determine if the impermissibly suggestive identification procedure created a very substantial likelihood of irreparable

misidentification:

1. The opportunity of the witness to view the criminal at the time of the crime.

2. The witness' degree of attention.

3. The accuracy of the witness' prior description of the criminal.

4. The level of certainty demonstrated by the witnesses at the confrontation.

5. The length of time between the crime and the confrontation.

*Biggers*, 409 U.S. at 199.

Although the trial court found otherwise, for purposes of this analysis we will assume, arguendo, that allowing the victim to identify the suspect while he was in police custody in the rear of a squad car was impermissibly suggestive. Accordingly, we analyze the facts at bar under the *Biggers* factors:

1. Opportunity to be observed.

At the suppression hearing, the victim testified that, through the moonlight coming into her apartment, she was able to observe the intruder's appearance, height, build, facial hair, etc. while he sexually battered her for approximately thirty minutes. The victim also stated that as the intruder fled the crime scene, she had the opportunity to view him when he ran through the light cast by a streetlight outside her apartment.

2. Degree of attention.

The victim testified that she has formal training in commercial art and as a portrait painter. The victim further stated that during the attack she paid careful attention to the intruder, to observe as many details as possible about his appearance. In addition to seeing the intruder, the victim had the opportunity to feel the hair on his head, the beard on his face, his clothing, and his physical stature.

3. Accuracy of prior description.

When the victim called the "911" emergency telephone operator, she described her attacker as being a white male having "stubble" on his face, like a two-day-old beard, dark hair, and that he was wearing "thick" clothing. When Hanks was taken into custody, he exhibited these characteristics.

4. Level of certainty at confrontation.

When the victim walked up to the squad car in which Hanks was being detained, Hanks looked up and stared at her through the car window. At that point, the victim exclaimed "[t]hat's him; that's the son-of-a-bitch; that's him." At the suppression hearing, the victim testified that as soon as she saw Hanks's face she was positive that he was the attacker.

5. Time between the crime and the confrontation.

The time lapse between the cessation of the attack and the victim's identification of the attacker was no more than thirty minutes. Because police officers were on patrol near the victim's apartment when

the dispatcher's report of the crime was broadcast and they almost immediately spotted Hanks, the police were able to apprehend the suspect and transport him to the victim's residence within a very short period of time.

In analyzing the trial court's conclusion that the pre-trial identification of Hanks did not create a very substantial likelihood of irreparable misidentification, this Court is guided by the familiar "substantial credible evidence" standard of review. *Magee v. State*, 542 So. 2d 228, 231 (Miss. 1989). The Mississippi Supreme Court has held that when reviewing a lower court's rulings regarding pretrial identifications, "[t]he combined effect of the circuit court's pre-trial and trial rulings is that of a finding of fact . . . ." *Ray v. State*, 503 So. 2d 222, 223 (Miss. 1986). Accordingly, this Court will disturb such a finding only where there is an absence of substantial credible evidence supporting it. *Id.* at 223-24. Considered in this context, the foregoing facts establish that substantial credible evidence supports the trial court's determination that this identification should not have been suppressed.

V. THE APPELLANT'S CONVICTION S AND SENTENCES ON BOTH OF THE COUNTS OF THE INDICTMENT VIOLATE THE DOUBLE JEOPARDY PROVISIONS OF THE STATE AND FEDERAL CONSTITUTIONS BECAUSE NO FURTHER EVIDENCE WAS NECESSARY TO PROVE THE SEXUAL BATTERY CHARGE ONCE THE PROSECUTION PROVED THE CHARGE OF BURGLARY OF AN OCCUPIED DWELLING AT NIGHT WHILE ARMED WITH A DEADLY WEAPON WITH INTENT TO COMMIT SEXUAL BATTERY. ALTERNATIVELY, IT WAS ERROR TO SENTENCE THE APPELLANT FOR BOTH BURGLARY OF AN OCCUPIED DWELLING AT NIGHT WHILE ARMED WITH A DEADLY WEAPON WITH INTENT TO COMMIT SEXUAL BATTERY AND FOR SEXUAL BATTERY. UPON HIS CONVICTION ON BOTH CHARGES, THE SEXUAL BATTERY MERGES INTO THE BURGLARY FOR SENTENCING PURPOSES, AND THE APPELLANT MAY ONLY BE SENTENCED ON THE BURGLARY CONVICTION.

Hanks's final assignment of error is that the Double Jeopardy clauses of the Fifth Amendment to the Constitution of the United States, and Article Three, Section Twenty-Two of the Mississippi Constitution bar his prosecution for both burglary and sexual battery. To determine whether a defendant was subjected to multiple punishment for the same offense, in violation of the Double Jeopardy clause, we are guided by the Supreme Court's decision in *Blockburger v. United States*, 284 U.S. 299 (1932) and its federal and state progeny. Our analysis of this issue follows the Mississippi Supreme Court's opinion in *Smith v. State*, 429 So. 2d 252 (Miss. 1983), containing a factual situation closely analogous to that at bar.

In *Smith*, the court followed the *Blockburger* rule whereby statutory offenses are compared to see whether each offense requires proof of an additional fact which the other offense does not, in scrutinizing double jeopardy allegations. *Smith*, 429 So. 2d at 254. The *Smith* court held no double jeopardy violation occurred in a concurrent prosecution for burglary and rape. The court held that because satisfying all the elements of burglary would not satisfy all the elements for rape, nor would satisfying all the elements of rape satisfy the elements of burglary, the two were separate and distinct offenses. Turning to the facts at bar, the so-called *Blockburger* "same evidence" test reveals that under Mississippi law burglary and sexual batter are indeed separate and distinct offenses. Hanks was convicted of violating Sections 97-17-23 (burglary) and 97-3-95 (sexual battery) of the Mississippi

Code. Section 97-17-23 proscribes the "breaking and entering, in the night, [of] the dwelling house of another, [while] armed with a deadly weapon . . . with [the] *intent* to commit some crime therein . . . ." Miss. Code Ann. 97-17-23 (Rev. 1994) (emphasis added). The felony of sexual battery is the offense Hanks was charged with *intending* to commit when he broke into the victim's home. It is readily apparent that the burglary statute imposes liability for breaking and entering with the intent to commit a crime, yet does not require the actual completion of the intended crime as a prerequisite to liability for burglary. A jury determination that Hanks intended to commit sexual battery in the course of the breaking and entering was not the same as finding that he satisfied all the elements of sexual battery. Sexual battery, as defined by Section 97-3-95 of the Mississippi Code, requires "sexual penetration." Burglary does not require "sexual penetration," nor does it share any other elements with the crime of sexual battery. Clearly, burglary and sexual battery are separate and distinct offenses under the *Blockburger* analysis, as the burglary was completed upon the breaking and entering with the required intent; the offense of sexual battery was not committed until later when Hanks took additional action, namely the "sexual penetration" of the victim. This assignment of error is without merit.

**THE JUDGMENT OF THE HINDS COUNTY CIRCUIT COURT OF CONVICTION AS A HABITUAL OFFENDER OF BURGLARY OF AN OCCUPIED DWELLING AT NIGHT ARMED WITH A DEADLY WEAPON AND SEXUAL BATTERY AND SENTENCES OF TWENTY FIVE AND THIRTY YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS IS AFFIRMED. SENTENCES TO BE SERVED CONSECUTIVELY AND TO RUN CONSECUTIVE WITH REVOCATION IN CAUSE F-206. COSTS ARE ASSESSED AGAINST HINDS COUNTY.**

**McMILLIN, P.J., DIAZ, HERRING, KING, PAYNE, AND SOUTHWICK, JJ., CONCUR. THOMAS, P.J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY COLEMAN, J. HINKEBEIN, J., NOT PARTICIPATING.**

5/20/97

IN THE COURT OF APPEALS

OF THE

STATE OF MISSISSIPPI

NO. 94-KA-00354 COA

MICHAEL PATRICK HANKS

APPELLANT

v.

STATE OF MISSISSIPPI

APPELLEE

THIS OPINION IS NOT DESIGNATED FOR PUBLICATION AND

MAY NOT BE CITED, PURSUANT TO M.R.A.P. 35-B

THOMAS, P.J., DISSENTING:

The disposition by the majority of the first issue in this case, that is, the prosecutor's comment during opening statements on the defendant's right to remain silent and not testify, is what causes me to dissent in this case. The prosecution is not permitted to make a comment, by reference, innuendo, or insinuation, about a defendant's failure to testify on his own behalf. *Livingston v. State*, 525 So. 2d 1300, 1306-07 (Miss. 1988). Had Hanks testified during this trial I could readily say the prosecutor's comments amounted to no error, or at worst, harmless error. Hanks did not testify. Therefore, I would reverse and remand this case for a new trial. I would likewise warn prosecutor's that the other allegations of prosecutorial misconduct raised by the defendant in this case are not totally without merit and should not occur again.

**COLEMAN, J., JOINS THIS SEPARATE WRITTEN OPINION.**